## FOSTER *v.* GOLDSCHMIDT and others.

*Circuit Court, S. D. New York.* July 17, 1884.)

1. PATENT—LICENSE—BREACH OF CONDITION—COMPLAINANT AT FAULT—EQUITY.
In an action growing out of the alleged failure of the defendant to act up to the terms of a license, granted him by the complainant, to sell a protected article, if the complainant refuses to fulfill any of his obligations in matters of substance, under the license, a court of equity will not interfere to assist him in compelling the defendant to observe the obligations upon his part.

2. SAME—CONDITION TO PROSECUTE INFRINGERS—HOW IT IS EXECUTED.
One of the conditions of a license being that the complainant should prosecute all unlicensed persons who should sell imitations of the article licensed, if the action of the complainant was such that it resulted, practically, in stopping infringements, he fulfilled the spirit and meaning of his obligation to the defendant to use reasonable diligence in prosecuting unlicensed sellers.

3. SAME—OLD AND NEW LICENSE—ELECTION—ESTOPPEL.
A condition in a license being that if any license should be thereafter granted under the patent, the terms and conditions of which should be more liberal to the licensee than those "herein contained," the defendants were to be entitled to receive the benefits of the additional advantages; if, upon such a case arising, the complainant gave the defendants the option of deciding whether they should have a new license or keep the old one, and the defendants elected to refuse the new license, they cannot be heard afterwards to allege that its terms were more advantageous to them. They cannot, instead of accepting the new license, *cum onere,* insist on determining what part they will accept and what part reject.

4. SAME—PROMISE IN THE ALTERNATIVE.
A promise in the alternative puts the alternative in the election of the promisor, unless there is something to take it out of the general rule.

5. SAME—AMBIGUOUS DOCUMENT—RULE OF CONSTRUCTION.
When both parties have acted upon a certain construction of an ambiguous document, that construction, if in itself admissible, will be adopted by the court.

In Equity.

*Livingstone Gifford,* for complainant.

*Marsh, Wilson & Wallis,* for defendants.

WALLACE, J. This case has been heard upon the pleadings, which set out copiously matters of evidence in support of the allegations. The bill of complaint is filed to restrain the defendants from selling gloves bearing lacing studs and lacings, which have not been applied to the gloves by the complainant, in violation of an agreement made between defendants and the complainant, June 6, 1876, whereby the complainant licensed the defendants to use certain patented hooks and lacings for gloves when applied to the gloves by complainant.

The conditions of the license agreement, so far as they are material to the present suit, are as follows: The complainant, in consideration of the payment of certain royalties by defendants, allows the defendants to sell gloves containing the patented invention, provided the gloves have had their lacing studs or hooks and lacings applied by the complainant. Article 3 of the agreement provides that whenever defendants desire to have gloves finished by the application of lacing studs or hooks and lacings, at least 60 days before the work of

finishing is to be commenced, they are to notify the complainant, stating when they will commence to furnish the gloves to be finished, and the number they will furnish each week. Article 4 provides that after the beginning of the time mentioned in the notice the defendants are to furnish the gloves to be finished to the complainant according to the terms of the notice; "which gloves shall be ready to be finished by the application of lacing studs or hooks and lacings." Article 5 provides that all gloves thus furnished to complainant he shall cause to be finished by the application of lacing studs or hooks and lacings, using the same material and care as he may use in finishing his own best quality of gloves, and shall return said gloves to the defendants within two weeks after he receives them. Article 12 provides that the complainant shall use reasonable diligence in prosecuting or causing the prosecution of unlicensed persons who shall sell imitations of the gloves hereby licensed. Article 17 provides that if any license shall be thereafter granted under said patent, the terms and conditions of which are more liberal towards the licensee than those herein contained, the defendants are to be entitled to receive the benefits of the additional advantages.

The defendants admit that since August 7, 1883, they have been selling gloves with the lacing studs and lacings which have not been applied by complainant, but they insist upon their right to do so, upon the theory that the complainant has violated some of the conditions on his part contained in the agreement. Concededly, if the complainant has refused to fulfill any of his obligations in matters of substance under the license, a court of equity will not interfere to assist him in compelling the defendants to observe the obligations upon their part. They allege that he has not used reasonable diligence in the prosecution of infringers under article 12 of the agreement, "in that prior to November, 1881, many persons were systematically selling large quantities of said laced gloves without any license in the city of New York;" that prior to that time they had notified him that numerous houses in the city of New York were then selling,—among them, A. T. Stewart & Co., Haines Bros., Wilmerding & Co., Egglebrect & Bernhart, and others,—and requested him to take steps to prevent such sales; and that he neglected and refused to prosecute such parties, or any of them.

The bill of complaint alleges the commencement of seven suits against parties selling such gloves in the city of New York between October, 1881, and May, 1882, and sets out the proceedings and their result sufficiently to show that the complainant exercised reasonable diligence and good faith. The answer admits that five of these suits were commenced, and that injunctions were obtained in four of them. Without attempting to particularize the allegations of the bill and answer in reference to this branch of the controversy, it will suffice to state that although it must be conceded that the complainant failed to prosecute several infringers whose conduct was complained of by

the defendants, it nowhere appears that any of the parties continued to infringe after the complainant had brought suits against other infringers in the same city. There is a general averment in the answer that during the whole time of the continuance of the license complainant refused to prosecute sellers whose sales were injuring the defendants; but this allegation refers to sales made by licensed parties, and by the terms of the agreement complainant only undertook to prosecute infringers. If the action of the complainant was such that it resulted practically in stopping infringement, he fulfilled the spirit and the meaning of his obligation to the defendant to use reasonable diligence in prosecuting unlicensed sellers.

There are two controlling facts bearing upon this question which stand admitted: *First*, that all the infringements of which defendants complained, and now complain, took place prior to November, 1881; and, *second*, that after the suits were brought by complainant the defendants continued to recognize the agreement as binding until June, 1883, when they placed their right to repudiate it upon another ground.

The reasonable deduction from all the facts, as they appear upon the pleadings, is that the complainant used reasonable efforts to stop infringements; that within a few months these efforts were successful; and that his conduct was acceptable to the defendants until other causes of disagreement arose.

The defendants contend that the complainant has refused to allow them the benefit of additional advantages granted to other licensees subsequent to the license to defendant. It was upon this ground that they insisted the complainant should finish their gloves with the new appliances invented by him subsequent to the date of their license, and upon his refusal to do so that they undertook to finish their gloves themselves, and to use the new appliances therefor.

The pleadings show that after the license to the defendants was granted, the complainant devised and patented improvements upon the old appliances; that in May, 1883, he transferred to Foster, Paul & Co. his business and his patents, reserving, however, such an interest therein as would enable him to carry out his agreements with his existing licensees; that thereupon he notified the defendants that they could elect to have their gloves finished by him under the existing agreement as theretofore, or they might surrender their license and receive from Foster, Paul & Co. a new license, under which that firm would finish the gloves with the new appliances; that accompanying said notice the complainant sent defendants the form of the new license to be issued by Foster, Paul & Co.; that this license provided that the licensee should be entitled to have the new appliances used in finishing their gloves, and also contained conditions in some respects more favorable, and in others less favorable, to licensees than those of the old license. The defendants refused to accept the new license, insisted that complainant should finish their gloves with the

new appliances, and notified him that if he refused to do so they should supply themselves with the new fastenings and finish their own gloves therewith; and thereupon, complainant having refused to comply with their demands, they adopted the course they had indicated they should adopt. The position of the defendants, therefore, is this : they insist that they are entitled to be furnished with the new appliances by the complainant on the same terms of the old license ; and, while they demand the benefit of the more favorable terms of the new license, they refuse to accept those which are more onerous. The error of this theory originates in a radical misconception of the meaning of the agreement. They are entitled to the additional advantages offered by a new license only when the terms and conditions of the new license are more liberal for the licensee than those of the old license. The obvious purpose of the condition was to put the defendants on an equality with any future licensees. If taken in all its parts, the new license is not more favorable to the licensee than the old ; the occasion does not arise upon which the condition becomes operative.

It cannot be determined as a matter of law or as a question of fact that the new licenses offered by the complainant in the name of Foster, Paul & Co. were more liberal in their terms towards licensees than were the old ones. The defendants evidently considered that they were not, because they refused to accept the new license. The complainant gave the defendants the option of deciding whether they preferred the new license to the old one ; and after the defendants elected to refuse the new one they cannot be heard to allege that its terms were more advantageous to them. Instead of accepting its benefits *cum onere*, they insisted on determining for themselves what parts they would accept and what they would reject. If this were permissible, instead of being placed upon an equality with the new licensees, they would enjoy superior privileges to them. Such a result was never contemplated by the agreement, and is opposed to any legitimate interpretation of its terms.

The defendants also contend that by the terms of their license agreement with complainant they were entitled to have their gloves finished with lacing studs or lacing hooks, at their option, and that the complainant has refused to finish their gloves with studs. The fallacy of their position consists in construing an option belonging to the complainant as one belonging to them. Article 5 of the agreement is the covenant on the part of the complainant in reference to finishing the gloves for the defendants, and obligates him to "cause them to be finished by the application of lacing studs or hooks and lacings." If there were nothing else than the language of this condition to resort to for construction, it would seem clear that the promise of the complainant would be performed by applying either lacing studs or hooks. The promise is in the alternative and the election with the promisor. The ancient case cited in *McNitt* v. *Clark*, 7 Johns. 465, where the obligor promised to pay £20 or 20 bales of wool, estab-

lished the rule. As stated by REDFIELD, C. J., in *Mayer* v. *Dwinell*, 29 Vt. 298, "a promise in the alternative puts the alternative in the election of the promisor, unless there is something to take it out of the general rule." There are other provisions of the agreement which enforce this interpretation of the condition, and indicate that the complainant was to determine whether lacing studs or hooks should be applied. Such are the provisions which require defendants to give notice in advance to the complainant of various details relating to the finishing of the gloves, but are silent as to the kind of fastenings to be applied. But perhaps the most satisfactory reason for construing the condition as indicated is the construction the parties have placed upon it themselves by their conduct until this controversy arose. When both parties have acted upon a certain construction of an ambiguous document, that construction, if in itself admissible, will be adopted by the court. Pollock, Cont. 392.

These considerations dispose of all the important questions in the case. There is no reason to suppose that the defendants have desired to disregard the complainant's rights, but they have acted on a false construction of the agreement.

A decree for an injunction and an accounting is ordered for complainant.