## TWENTIETH CENTURY–FOX FILM CORP. et al. v. BROOKSIDE THEATRE CORP.

### No. 14399.

United States Court of Appeals Eighth Circuit.

Feb. 11, 1952.

---

9. See R.S. § 566, 28 U.S.C. § 770 (1946 ed.); Reviser's Note to 28 U.S.C. § 1873;

Rule 38, Federal Rules of Civil Procedure, 28 U.S.C.

John F. Caskey, New York 'City, and William E. Kemp, Kansas City, Mo. (Byron Spencer, A. L. Cooper, Wallace Sutherland, Joseph J. Kelly, Jr., Richard P. Brous, Kansas City, Mo., and E. Compton Timberlake, Denver, Colo., on the brief), for appellants.

William G. Boatright and Arthur C. Popham, Kansas City, Mo. (Nick C. Spanos, Los Angeles, Cal., on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS and COLLET, Circuit Judges.

GARDNER, Chief Judge.

This appeal is from a judgment in favor of plaintiff Brookside Theatre Corporation, appellee herein, and against Twentieth Century-Fox Film Corporation, Paramount Pictures, Inc., Loew's Incorporated, RKO Radio Pictures, Inc., Warner Brothers Pictures, Inc., Warner Brothers Picture Distributing Corporation, Columbia Pictures Corporation, Universal Film Exchanges, Inc., and United Artists Corporation, in an action for treble damages for alleged violation of the Federal Anti-Trust Law, 15 U.S.C. §§ 1, 2 and 15. The action was tried before a jury resulting in a verdict in favor of plaintiff in the amount of $375,000, upon which verdict a judgment for $1,125,000 was entered and thereafter on motion attorney fees were assessed against defendants in the sum of $150,000, besides certain costs and expenditures.

Generally speaking, the defendants are engaged in the business of producing, distributing or exhibiting motion pictures either directly or through subsidiaries or as-

sociated companies in various parts of the United States. Plaintiff is a Missouri corporation and in September, 1936, it became the lessee of the Brookside Motion Picture Theatre at 63rd and Brookside Streets in Kansas City, Missouri. The lease was for a fifteen-year term commencing March 1, 1937. In its complaint it charged that its business and property were injured by reason of a conspiracy among and the business practices of the defendants in violation of the Anti-Trust Act, in that defendants and their subsidiaries or interrelated companies, including the National Theater Corporation and Fox Midwest Theaters, Inc., conspired to drive it out of business and to circumscribe, limit and restrain the basis on which it could compete with theaters managed or controlled by defendants and in aid of such alleged conspiracy defendants resorted to various illegal business practices such as requiring defendant to maintain stated minimum admission prices and such as entering into master agreements whereby all of the product owned by the distributor defendants was tied up for an entire season or several seasons at a time of favor of theaters operated by the major defendants and such as granting to defendants' operating subsidiaries special terms and concessions as to price, playing time, eliminations and rebates that were not granted to plaintiff or available to it, and such as establishing substantially uniform systems of runs and clearances in local competitive areas whereby the theaters operated by the major defendants were allowed and permitted to tie up all or substantially all of the desirable runs for subsequent theaters in such local competitive areas. It also charged that such conspiracy and illegal business practices extended throughout the United States for a period beginning prior to 1936 and until long after plaintiff had turned over its Brookside Theater to the Fox Midwest Theaters and that such conspiracy and illegal practices existed, prevailed and were carried out by all of the defendants and National Theaters Corporation and Fox Midwest Theaters, Inc., in Kansas City, Missouri, during said period of time.

It appears from the record that one Harry Jacobs built a theater which he leased to plaintiff for a period of fifteen years. Under this lease agreement plaintiff agreed to furnish and equip the theater and the theater was to seat at least 1000 persons. At the time it was built it was one of the finest suburban theaters in Greater Kansas City and the initial cost to plaintiff for furnishings, equipment and decorations was approximately $34,000 in 1936 and 1937. After equipping and opening the theater plaintiff made frequent and persistent efforts to secure from the various defendants suitable pictures for exhibition but was unable to do so and there was proof warranting the jury in finding that the defendants through a concert of action amounting to conspiracy refused to furnish plaintiff with suitable pictures on terms enjoyed by defendants' controlled picture houses and that concerted action on behalf of the defendants had the effect of making it impossible for plaintiff successfully to operate its picture theater and in effect drove it out of business, forcing it to sell to a corporation controlled by or participating in the conspiracy or combination created by the defendants.

In support of the allegations of plaintiff's complaint it offered in evidence the primary record in a case entitled United States of America v. Paramount Pictures, Inc., D.C., 85 F.Supp. 881, and was permitted to read to the jury that part of the final decrees which incorporated by reference the findings of fact and conclusions of law and to read such portions of the findings of fact and conclusions of law as had direct relation to the charges contained in plaintiff's complaint in the instant action. These decrees and findings adjudicated that defendants and the National Theater Corporation and other corporations not involved in the present suit unreasonably restrained trade and commerce in the distribution and exhibition of motion pictures and monopolized and attempted to monopolize such trade and commerce. This evidence was admitted as against defendants in the instant action who were also defendants in the Paramount case, pursuant to a provision of the so-called Clayton Act, 15 U.S. C. § 16, which provides that a determination in a litigation instituted by the United States that a defendant has violated the

Anti-Trust Law "shall be prima facie evidence against such defendant in any suit or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto". In addition to the record in the Paramount case plaintiff offered oral and documentary evidence tending to prove that the practices and acts found in the Paramount case to be violative of the Sherman Anti-Trust Act, existing generally throughout the country, were practiced by defendants at Kansas City, Missouri, and that as a result of such practices plaintiff was injured in its business and property.

The sufficiency of the evidence to establish the alleged conspiracy is not directly challenged on this appeal, making it unnecessary to recite in detail the character of this evidence as the jury's verdict on the issue of conspiracy is not here reviewable.

The defendants at the close of all the testimony interposed motions for directed verdicts which were denied and the case was submitted to the jury on instructions to which defendants claim to have saved certain exceptions. The jury having returned a verdict in favor of the plaintiff and against the defendants on all the issues as above recited, the court after denying motion for a new trial entered judgments from which these appeals are prosecuted. The appeals have for the purpose of presentation been consolidated and presented on one record consisting of about 3500 pages.

At the very threshold of our consideration of the issues sought to be presented we are met with a challenge as to the sufficiency of the record, particularly the brief of appellants, to present any issue for review. Rule 11 of this court provides, among other things, that the brief of appellant shall contain, "Third.—A concise statement of the case in so far as is necessary for the court to understand and decide the points to be argued in the brief, giving the pages of the printed record where each fact stated can be found and verified. If a point relates to the admission or exclusion of evidence, the statement shall quote the evidence referred to, and any objections or other equivalent action

taken relative thereto, together with the rulings of the court thereon, giving the pages of the printed record on which the quotations appear. * * * Fourth.—A concise statement of each point to be argued, with a complete list of all cases and statutes referred to in the argument covering the point,—the cases which are considered to be most apposite and convincing, not exceeding four in number, to be printed in bold-face type. Fifth.—A printed argument which shall substantially follow the order of points stated under paragraph 'Fourth'. The court will disregard any statement in the argument as to what the record contains unless reference is made to the page of the printed record where the statement may be found or verified. * * "

In the preparation of their brief (which was doubtless prepared by non-resident counsel) counsel for appellants have wholly disregarded this rule. In lieu of "A concise statement of each point to be argued," they have printed what is designated as "Summary of Argument," under which appear the following·

"First. The Court erred in its treatment of United States v. Paramount.

"A. Opening Statement.

"B. Admission of Evidence.

"C. Charge.

"D. Closing Argument.

"Second: The error of the trial court in rejecting defendants' evidence as to the reasons why each licensed the Brookside Theater as it did, denied defendants the right to litigate the fundamental issue of whether their action was conspiratorial.

"Third: The reception of evidence as to profits made by Fox Midwest after plaintiff sold its leasehold and the instructions to the Jury as to the measure of damages resulted in substantial error which gave plaintiff a monstrous verdict.

"A. The value of plaintiff's business as of November 20, 1937, must be determined with reference to conditions then existing.

"B. The recovery by plaintiff of the profits made by Fox Midwest in the period after plaintiff sold its interest in the theater results in a rule of law which leads to speculation and injustice.

"C. The opinion evidence offered by the plaintiff was insubstantial and not the lawful basis of recovery.

"D. The Court improperly submitted to the Jury the question as to the amount of the Brookside's profit.

"E. The Court's charge to the jury with respect to income taxes was highly prejudicial.

"F. The award of attorneys' fees was excessive.

"Fourth: The trial court gave numerous erroneous, conflicting and prejudicial instructions and refused to give correct instructions requested by defendants.

"A. As to conspiracy.

"B. As to the extent of the estoppel created by the Clayton Act..

"C. As to master agreements.

"D. As to exclusive contracts.

"E. As to dealings with plaintiff. ·

"F. As to the Paramount case.

"G. As to damages.

"H. As to conflicting charges.

"I. As to refusals to charge.

"Fifth: The highly prejudicial and inflammatory closing argument of plaintiff's counsel denied defendants a fair trial.

"A. Plaintiff's counsel's references to the Paramount case were improper.

"B. Plaintiff's counsel went far beyond the bounds of propriety in abusing the defendants.

"C. The misconduct of plaintiff's counsel in making statements as to the character and veracity of plaintiff's witnesses requires the granting of a new trial.

"D. Plaintiff's counsel appealed to local prejudice, patriotic prejudice and class prejudice.

"E. Plaintiff's counsel was guilty of misconduct requiring reversal by his improper use of inflammatory language to arouse sympathy in the minds of the jurors.

"F. Plaintiff's counsel abused defendants' counsel and this abuse was clear and reversible error.

"G. The deliberate intent and effect of the closing argument by plaintiff's counsel were to deny defendants a fair trial."

 What is said in Anderson v. Federal Cartridge Corporation, 8 Cir., 156 F.2d 681, 683, is here apposite, and in referring to the points to be argued as set out in appellant's brief we there said:

'These points challenge no specific action or ruling of the court. The purpose of the rule requiring that appellant's brief shall contain a separate and particular statement of each point relied upon is to point out to the appellate court and to opposing counsel the specific ruling or action which is challenged as erroneous without going beyond the assignment itself, and to limit the presentation in the appellate court to the matters in the points or specifications as stated in the brief. Cohen v. United States, 8 Cir., 142 F.2d 861; E. R. Squibb & Sons v. Mallinckrodt Chemical Works, 8 Cir., 69 F.2d 685; Hard & Rand v. Biston Coffee Co., 8 Cir., 41 F.2d 625; Butler v. United States, 8 Cir., 108 F.2d 27: Ed. S. Michelson, Inc. v. Nebraska Tire & Rubber Co., 8 Cir., 63 F.2d 597. The error assigned must be sufficiently specific so that the attention of the court is directed to the specific action or ruling of the court without requiring the court to search the record to determine what the issue is. Certain of the points or assignments are directed generally to the rulings of the court on the admissibility of evidence but none of these points which seek to challenge the rulings of the court on the admissibility of evidence quote the evidence referred to; neither do they give the objections that were interposed, nor the rulings of the court on the objections.

"This is an appellate court sitting to review alleged errors of law, and not to try the action de novo."

See, also: Hansen v. St. Joseph Fuel Oil & Mfg. Co., 8 Cir., 181 F.2d 880; Mill Owners Mutual Fire Ins. Co. v. Kelly, 8 Cir., 141 F.2d 763; American Ins. Co. v. Scheufler, 8 Cir., 129 F.2d 143; Cohen v. United States, 8 Cir., 142 F.2d 861.

The ruling of the court in denying defendants' motions for directed verdicts not

being challenged, the other errors that might have prejudicially affected the rights of the defendants would be the court's rulings on the admissibility of evidence, its instructions to the jury, and the alleged misconduct of counsel in his closing argument to the jury. In the above quoted points to be argued it will be observed that no specific ruling of the court on the question of the admissibility of evidence is pointed out. While the rule requires that the assignment "shall quote the evidence referred to and any objections or other equivalent action taken relative thereto, together with the rulings of the court thereon, giving the pages of the printed record on which the quotations appear," we are not advised where in this record of some 3500 pages the ruling or rulings challenged may be found. We are not advised what the questions propounded were, what the objections were, or what the rulings on the objections were. The general nature of the testimony is hinted at and the most that can be said with reference to it is that the court is invited to search the record for error in connection with the rulings of the court as to the admissibility of such evidence.

The issue as to the correctness of certain instructions of the court is equally indefinite. The instructions are not set out; neither are the objections or exceptions thereto set out. These points to be argued do not reach the dignity of an index which might direct us to the places in the record where the rulings of the court which are complained of may be found and examined. In this connection we should perhaps observe that there is in effect a separate brief filed on behalf of certain of the defendants, in which they seek to raise the question of the applicability of the California three-year statute of limitations. The statements in this separate brief we think sufficient to present that question for consideration.

■ Due to the importance of the case and its quasi-public nature we shall consider as best we can, as a matter of grace, the principal contentions of the defendants.

■ As has been noted, plaintiff offered in evidence copy of the primary record in the Paramount case, which included the petition or complaint, the final decree, findings of fact and conclusions of law and bill of particulars. The final decree incorporated by reference the findings of fact and conclusions of law. Over objections that the record, including the decree, did not establish any fact in favor of the United States which could be the subject of an estoppel between the United States and the defendants in subsequent litigation and could not create any estoppel in this case even under the statute, and that no fact is established by the decree which is the subject of any estoppel, the court admitted the exhibits in evidence, stating that the admission was for the purpose of the record but that the court would permit reading only portions of the record to the jury. The court in fact permitted the reading of such portions of the final decree and such portions of the findings of fact and conclusions of law as related to the charge contained in the complaint. In addition to the limited use permitted of this evidence the court instructed the jury that they could not find a verdict in favor of plaintiff simply because the defendants had been unsuccessful litigants in this Paramount suit and that, "In admitting these findings in evidence for your consideration, you are charged that they of themselves do not establish any fact as to the activities of these defendants in Kansas City, Missouri. They cover a nationwide situation of which the Government complained." There was no prejudicial error in admitting this testimony. Section 5 of the Clayton Act, 15 U.S.C. § 16; Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 71 S.Ct. 408, 414, 95 L.Ed. 534. In the Emich Motors case the court in the course of its opinion said: "* * * we think plaintiffs are entitled to introduce the prior judgment to establish prima facie all matters of fact and law necessarily decided by the conviction and the verdict on which it was based."

In the instant case the court in its instructions, in summarizing the Paramount case, stated the ultimate facts determined and did not submit to the jury evidentiary facts and this we think was in substantial compliance with the decision of the Supreme

Court in the Emich Motors case. The argument with reference to the admissibility of this evidence is so commingled with the argument with reference to the instruction relative thereto that it is somewhat difficult to determine whether the alleged error is based upon the ruling of the court in admitting the evidence or in the instructions given relative thereto. In our opinion, as limited and qualified by the court's instructions the evidence was admissible and defendants' contention with reference to this alleged error is wholly without merit.

In support of its claim for damages plaintiff employed a certified public accountant to examine the books produced by the defendants reflecting the results from the operation of the Brookside Theater from December 18, 1938 to August 18, 1950. After testifying that he had made a study of the records that were exhibited covering this period of operation, he was interrogated as to the gross receipts for each of the years. This was objected to on behalf of the defendants as being "inadmissible on any subject of damages and further that the profits themselves are not any element of recovery and that the amount of the profits beyond a reasonable period after the sale in 1937 should not be considered." The court in ruling on the objections interposed said: "I am not an expert but I do think you have to know what the gross receipts are to tell what the net profits are," and thereupon overruled the objection. The accountant then testified with reference to the gross receipts as shown by the books and also testified to the allowances for depreciation and expenses of operation. Summarizing the result of his examination, he testified that during the period of time covered by the inquiry the net profits realized from the operation of the Brookside Theater were $317,478.02. The results of these calculations were set down in detail and shown in plaintiff's Exhibit 113. After the witness testified to the various items and factors taken into consideration in his calculations the exhibit was ultimately received in evidence. The defendants produced an expert accountant who based his calculations upon the same period and the same records and who produced substantially different results, because of various items taken into consideration by him. There is a substantial variance between the amount allowed for depreciation and other items of expenditures.

The court, in its instructions, told the jury in effect that they might consider this evidence, not as fixing the measure of damages but along with all other testimony, and the jury was advised that such profits are not necessarily the measure of damages but simply a circumstance and an element to be taken into consideration. Referring to this character of testimony the court further instructed the jury that,

"Such profits are simply one of the elements to be taken into consideration in determining plaintiff's damages, if any. That is between the period of November 20, 1937, and the end of the lease. It is simply one of the factors which you may take into consideration together with all of the other facts and circumstances in arriving at a determination of the amount of damages you may find and believe from the evidence was sustained by plaintiff to its business and property."

It seems to be the contention of defendants as to the admissibility of this evidence that the court erred in permitting the jury to use the amount of profits made during the period subsequent to the date at which plaintiff was forced out of business by the tortious acts of defendants as a basis for the award of damages, whereas the evidence should have been limited to show the difference between what plaintiff received on the sale of its property and its fair market value on that date. We think the court's instruction clearly answers this criticism. The property involved was not only the physical properties sold but a leasehold of fifteen years' duration and hence the alleged tortious act was an injury to plaintiff's business, and the profits that might reasonably have been anticipated from the conduct of that business were, we think, a proper item for consideration, exactly as the court advised the jury. Such damages need not be capable of calculation with absolute exactness and the loss

of prospective profits from a business is an item for which recovery may be had. No hard and fast rule for ascertaining such profits can be laid down but they must be determined according to the circumstances of each case. The damages recoverable under the Federal Anti-Trust Law are both punitive and compensatory. The measure of such damages is the pecuniary loss to plaintiff's business or property resulting proximately from the conspiracy or combination. They must be actual damages and not speculative or conjectural. The uncertainty, however, which precludes the recovery of particular damages is uncertainty as to whether they are the result of the tortious acts of defendants, rather than uncertainty as to amount, and the fact that damages can not be calculated with mathematical exactness does not make them so uncertain as to bar recovery. Bigelow v. RKO Radio Pictures, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652; Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684. Hence, loss of profits may constitute an element of recoverable damages where they are capable of being measured or ascertained on a reasonable basis.

We held, in Falstaff Brewing Corp. v. Iowa Fruit & Produce Co., 8 Cir., 112 F.2d 101, 105, in an action for damages for the tort of a defendant, that evidence as to profits might properly be considered by the court. We there said: " * * * there is evidence as to the exact number of cases of bottled beer sold during that time by Christensen who took over this agency. All of these sales were made by the same salesmen who had acted during the first six months in the same territory for appellee and Christensen testified that he, personally, made practically no sales, leaving that matter to these salesmen. There is no reason to believe that approximately the same sales would not have been made had there been no change in the agency. * * * From all of this evidence, it is clear that there was a proper basis in the evidence for the jury to have found the full amount of damages ($3,000) sought by appellee for the loss of profits arising from breach of contract."

The value of the right to continue business, of which the plaintiff was deprived by the wrongful act of the defendants, depended certainly to some extent on its capacity to make profit. The sufficiency of the evidence of profits as an element of recoverable damages is dependent upon whether the data of which the evidence consists is such that a just and reasonable estimate can be drawn from it, and it is not necessary to show with absolute certainty how much profit would have been earned. Neither in the admission of evidence with reference to profits nor in the instructions of the court with reference to the use that might be made of such evidence by the jury, was there any error.

In arguing the question of the admissibility of this evidence, counsel commingle it with criticism of the court's instructions and ultimately in this same connection argue the question of the alleged excessiveness of the verdict. The court fixed the date at which the damage should be ascertained as November 20, 1937, and instructed the jury that if it found that the sale on that date was an involuntary one, brought about by the tortious conduct of defendants, it might then consider as a factor or element of damage, lost profits. It is somewhat difficult to determine what objections defendants urged to the court's instructions on the question of damages and it is observed that by their requested instruction No. 49 they asked the court to charge that: "You may take into consideration the amount of the net earnings of the Brookside Theater for the period it was operated prior to the sale thereof on November 20, 1937, and also the earnings of said theater for such reasonable period of time following the sale to the Fox Company as would fairly indicate the earning power of said theater when free from any restrictive effects of the alleged conspiracy."

In view of these requests made of the trial court, defendants are not in a position to complain of the charge of the court with reference to how this evidence might be considered by the jury. If profits that might reasonably be realized from the conduct of a business destroyed

by the tortious act of wrongdoers may not be taken into consideration in ascertaining damages, then the wrongdoer might with impunity destroy a competitor's business and profit by such wrongful act. In view of the verdict of the jury we must assume that plaintiff was forced out of business by the tortious acts of the defendants. True, the cause of action for such wrongful acts arose at the time such wrongful acts were consummated and plaintiff could at any time thereafter, within the period of limitations, have sued to recover the damages suffered.

Complaint is made that if the action had been tried at the time it first accrued, it would not then have been possible to make proof of the prospective profits that might reasonably have resulted from a conduct of the business during the period of the leasehold destroyed. That would doubtless have been a misfortune to the plaintiff but it does not change the rule as to the measure of damages nor the admissibility of evidence to prove damages. In Restatement of Torts, Volume 4, Chapter 47, Section 910, the rule is stated as follows: "Time when the requirement of certainty is satisfied. Although at the time of the commission of the tort or at the time of bringing suit there can be no recovery for a particular resulting harm because its extent was then not definitely ascertainable, if, before the time of trial, the situation is so changed that the extent of harm can be proved with the required degree of certainty, recovery is permitted. * * * Thus where there has been interference with a business, events antecedent to the trial may indicate that profits which at the time of the tort were apparently speculative would certainly have been made, * * *."

This, we think, states the rule applicable to the situation here presented. See, also: People's Ice Co. v. Steamer Excelsior, 44 Mich. 229, 6 N.W. 636; Chapman v. Kirby, 49 Ill. 211.

In this same connection and commingled therewith it is argued that the verdict is excessive. This court has consistently held that in a tort action excessiveness of the verdict is a question to be determined by the trial court on motion for new trial and can not be considered as a ground for reversal. Kroger Grocery & Baking Co. v. Yount, 8 Cir., 66 F.2d 700, 92 A.L.R. 1166; Peitzman v. City of Illmo., 8 Cir., 141 F.2d 956; St. Louis Southwestern Ry. Co. v. Ferguson, 8 Cir., 182 F.2d 949; Missouri-Kansas-Texas Ry. Co. v. Ridgway, 8 Cir., 191 F.2d 363. As to this rule we said in St. Louis Southwestern Ry. Co. v. Ferguson, supra [8 Cir., 182 F.2d 955]:

" * * * under the concept of appellate function in jury cases which has heretofore been expressed by the decisions of the Supreme Court and in our own, the change is not one which we would feel entitled to make."

Ordinarily it is the exclusive function of the jury to fix the amount of damages. Barry v. Edmunds, 116 U.S. 550, 6 S.Ct. 501, 29 L.Ed. 729; Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Bordonaro Bros. Theatres, Inc., v. Paramount Pictures, Inc., 2 Cir., 176 F.2d 594. The amount of damages assessed by the jury is confessedly large but it can not be said that it does not respond to the evidence and the trial court in its discretion overruled defendants' motion for a new trial.

It is argued, though not properly assigned as error, in defendants' brief that the trial court erred in rejecting defendants' offer to prove why they licensed the Brookside Theater as they did. As we understand the offer, defendants wished to show that in licensing pictures to independent exhibitors operating theaters in Kansas City each defendant was acting independently and not as the result of any understanding or conspiracy between the various defendants, and particularly they wished to show that in an action referred to as the Rolsky case a trial judge had held under circumstances not unlike those present in the instant case, that each distributor had acted independently. Plaintiff was not a party to that suit and what may have been held by the trial judge there was not binding upon plaintiff, nor indeed upon the trial court, in the instant case. It was the province of the judge in this case to

determine and declare the law and defendants were at all times here involved presumed to know the law and the question of intent was wholly immaterial. Such evidence at best could go only to the question of mitigating punitive damages. Here the punitive damages could not be mitigated because fixed by the statute providing for treble damages. Whether the defendants acted conspiratorily or independently was to be determined in this case by the facts and circumstances shown in evidence and the law as declared by the court, and could not be determined nor affected by what a trial judge may have held in some other action to which plaintiff was not a party. Anderson v. Hultberg, 8 Cir., 247 F. 273; Press. Pub. Co. v. McDonald, 2 Cir., 63 F. 238; Baush Mach. Tool Co. v. Aluminum Co., 2 Cir., 79 F.2d 217.

The question of specific intent is not here material. United States v. Aluminum Co., 2 Cir., 148 F.2d 416; United States v. Masonite Corp., 316 U.S. 265, 62 S.Ct. 1070, 86 L.Ed. 1461; United States v. General Motors Corp., 7 Cir., 121 F.2d 376, 406. In the last cited case an offer of evidence of the general character offered here had been excluded. In sustaining the ruling of the court it is said: "Manifestly the evidence related more to the possible motives or reasons inspiring the conspiracy, than to the effect which the imposition of the finance restrictions would have on the dealers' commerce in General Motors cars. * * * By purposely engaging in a conspiracy which necessarily operated to produce a direct restraint upon interstate commerce, they had become chargeable with intending that result."

The Supreme Court in United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 847, 84 L.Ed. 1129, in referring to certain offers of proof which had been rejected said:

"The offers of proof covering the background and operation of the National Industrial Recovery Act [48 Stat. 195] and the Petroleum Code [15 U.S.C.A. § 715 et seq.] the condition of the oil industry, the alleged encouragement, cooperation and acquiescence of the Federal Petroleum Administration in the buying programs and the like were properly excluded, insofar as they bore on the nature of the restraint and the purpose or end sought to be attained."

We are of the view that the exclusion of the proffered testimony was not prejudicial error.

Certain of the defendants pleaded that the action as to them was barred by the California three-year statute of limitations. Code Civ.Proc. § 338. This action was commenced in the Federal Court for the Southern District of California on June 27, 1949, and transferred to the United States District Court for the Western District of Missouri. In support of this contention it is argued that the Paramount case was not pending against them from November 20, 1940, to August 7, 1944. An interlocutory consent decree was entered in the Paramount case November 20, 1940. On August 7, 1944, the government moved for trial. It is conceded that the Paramount case was pending from July 20, 1938, to November 20, 1940, and that the case was again pending after August 7, 1944. Section 5 of the Clayton Act, 15 U.S.C. § 16, provides that whenever any suit or proceeding in equity or criminal prosecution is instituted by the United States to prevent, restrain or punish violations of any of the anti-trust laws, the "running of the statute of limitations in respect of each and every private right of action arising under said laws and based in whole or in part on any matter complained of in said suit or proceeding shall be suspended during the pendency thereof." This act provides for the tolling of the statute of limitations so long as the government suit is pending. We think it clear that the consent decree entered in the Paramount case was not in reality a final decree. It certainly did not terminate the litigation and it was not intended as a final decree terminating the litigation. The consent decree entered in the Paramount case reserved to the United States the right at the end of a three year trial period to seek the relief prayed for in the amended complaint. At the end of the three year period the United States moved for trial against all the defendants. We conclude that the Paramount case was

pending until the final decree entered therein was either affirmed by the Supreme Court or the time for appeal had expired. The statute of limitations was therefore not available to the defendants.

■ It is contended that defendants were prevented from having a fair trial because of the misconduct of counsel, particularly that of Mr. Popham in his closing argument to the jury, and it is also urged that Mr. Boatright in making his opening statement transgressed the rules governing such a statement. We shall first refer to Mr. Boatright's opening statement. Counsel for plaintiff is entitled to make an opening statement to the jury and should do so, stating the issues and outlining the facts intended to be proved. It is not in the nature of an argument but a statement of the issues and of the evidence proposed to be offered in sustaining the issues so as to indicate to the judge and the jury the issues of fact involved. Mr. Boatright's remarks with reference to the Paramount case are urged as improper. The final judgment and findings in the Paramount case were admissible evidence and in fact were admitted. What Mr. Boatright said with reference to this evidence was so notorious and well known as to be a matter of history. He referred to no evidence that was not admissible and it is not conceivable that what he said in his opening statement with reference to the decree and findings in the Paramount case could well have been prejudicial in a case that was submitted to the jury seven weeks after this incidental statement.

■ As to the closing argument of Mr. Popham it must be admitted that there is much ground for criticism and we do not commend it as a model of propriety. It is urged that it was calculated to arouse the prejudice of the jury. The arguments of all counsel are reproduced in full in the record. They are extremely lengthy and any attempt to review them in detail would serve no useful purpose and would unduly extend this opinion. The evidence in this case was itself of such a nature that it might well have aroused some prejudice in the minds of the jury. Similar evidence has been characterized as "bold, relentless

and predatory commercial behavior." But counsel were not for that reason, however, precluded from making an argument based upon such evidence. Generally it may be said that the arguments of counsel for defendants were somewhat vitriolic and denunciatory. Counsel charged deliberate perjury against many of plaintiff's witnesses and referred to the testimony as "dramatics," "a shrewd piece of business," "the story of chances," "an elaborate story," and similar accusations. Two of plaintiff's witnesses were directly charged with manufacturing evidence. Neither was the argument of counsel for defendants strictly confined to the record and at least much of what is objected to in the closing argument of counsel for plaintiff was provoked by the improper argument of counsel for defendants. This court, in Myres v. United States, 8 Cir., 174 F.2d 329, 339, in referring to retaliatory statements made by opposing counsel held that, "This Court has said that it will not reverse for improper remarks, in closing arguments, invited or provoked by opposing counsel." The arguments of counsel for defendants were quite as extravagant and reprehensible as the closing arguments of counsel for plaintiff. In this closing argument which we think under ordinary circumstances would certainly have imperiled the verdict, counsel indulged in sarcasm, ridicule and buffoonery. But most of the objections interposed were sustained by the court and the argument was either based upon the evidence or was invited or provoked by improper arguments of counsel for the defendants. In this state of the record the closing argument of counsel for plaintiff, though containing much that is reprehensible, is not ground for reversal.

■ As has been noted, the court allowed attorney fees in the sum of $150,000, and it is contended that this allowance was excessive. The case was an important one but it was not a pioneer but had many predecessors involving substantially the same issues. It contained no novel questions taxing the ingenuity or skill of counsel as prior cases in the same field had charted the course and procedure to be followed. In addition to this there was made available

to counsel the decree and record in the Paramount case which in itself, by reason of the statute, made a prima facie case against the defendants which were parties to that action so that it was only necessary to produce evidence showing that the defendants were guilty of the same character of practices in the Kansas City area and to make proof of the damages arising from such practices. The damages were assessed by the jury at $375,000. This was the only recovery that may be attributable to the services of counsel for plaintiff as it was through no effort of theirs that these damages were trebled. $150,000 is 40 per cent of the amount of damages suffered by plaintiff. The statute provides for the recovery of "reasonable" attorney fees. Such fees are not to be calculated on the basis of a contingent fee. But even if so calculated, 40 per cent of the amount of the verdict in this case would, in our opinion, if to be paid out of the amount of damages recovered, shock the conscience and we think there is no basis for determining the reasonableness of attorney fees by a different standard simply because they are to be paid by the defendants and not by counsel's client. Courts are not bound by the testimony of experts as to attorney fees. The allowance of such fees may be made, based upon the record and the expert knowledge possessed by the judges of either trial or appellate courts, without any specific testimony with reference to the value of the services. Merchants' & Manufacturers' Securities Co. v. Johnson, 8 Cir., 69 F.2d 940; Blackhurst v. Johnson, 8 Cir., 72 F.2d 644. In the recent case entitled Milwaukee Towne Corp. v. Loew's, Inc., 7 Cir., 190 F.2d 561, 569, the trial court made an allowance of $225,000 for attorney fees. The Court of Appeals reduced the allowance to $75,000. In referring to the allowance made by the trial court it is said: " * * * the fabulous amount allowed is shocking to our sense of reason and justice. * * * And we are disturbed because in our sober judgment this exorbitant allowance, if it should become a precedent, is calculated to bring both the bar and the bench into public disrepute. More than that, the possibility that the anti-trust laws might develop into a racketeering practice should not be enhanced by the allowance of exorbitant and unreasonable attorney fees. It should not be made more profitable than it is for a person to become the victim of a conspiracy in restraint of trade."

 In general, statutes providing for attorney fees contemplate a reasonable fee. Dumas v. King, 8 Cir., 157 F.2d 463; Business Men's Assur. Co. v. Campbell, 8 Cir., 18 F.2d 223. We have carefully studied the entire record and briefs and can not escape the conclusion that the fees allowed to attorneys for plaintiff are excessive, and it is the duty of appellate courts to protect against "vicarious generosity" in the matter of attorney fees. We therefore modify the judgment and allowance of attorney fees by reducing the allowance from $150,000 to $100,000 for all attorney fees, including fees on this appeal.

We have given consideration to all the other contentions urged by appellants but find them wholly without merit.

The judgment and orders appealed from are modified only as to the amount allowed for attorney fees and as so modified the judgment and orders appealed from are affirmed. No costs are to be taxed in favor of either of the parties on this appeal.