**KOOLVENT METAL AWNING CORP. OF AMERICA v. BOTTOM et al.**

No. 14536.

United States Court of Appeals
Eighth Circuit.

June 15, 1953.

Rehearing Denied Aug. 4, 1953.

Edmund C. Rogers and Lawrence C. Kingsland, St. Louis, Mo. (Estill E. Ezell and Kingsland, Rogers & Ezell, St. Louis, Mo., on the brief), for appellant.

Lawrence H. Cohn, St. Louis, Mo. (Terry & Cohn, St. Louis, Mo., on the brief), for appellees.

Before GARDNER, Chief Judge, and RIDDICK and COLLET, Circuit Judges.

GARDNER, Chief Judge.

This appeal is from a judgment entered in favor of appellees in a suit brought by appellant for specific performance of certain patent license contracts and for damages for the breach thereof. The parties will be referred to as they were designated in the trial court. Defendants in their answer alleged that the contracts had been lawfully terminated by notices served on plaintiff in September, 1949; that plaintiff had repudiated prior dependent covenants of each contract and did not come into court with clean hands and that defendants had suffered an eviction and failure of consideration by reason of judgments holding the licensed awnings to infringe a senior patent held by a third party. Defendants also interposed a counterclaim for damages on account of expenses incurred in the defense of patent suits which plaintiff had agreed but later refused to defend.

Plaintiff was organized in 1944 as a licensing corporation. By contract with George A. Houseman it acquired the right to use the trade name "KoolVent" and to grant licenses in thirty-eight states for the manufacture and sale under that name of patented aluminum awnings. On March 16, 1946, it entered into a license agreement with defendant Bottom granting him exclusive territorial license for the manufacture and sale of such awnings and use of tradename. A second license contract was entered into in November 1947, which enlarged the territory covered by the first license agreement. Both contracts authorized Bottom to organize corporations for the production and sale of the awnings and the defendant corporations were organized in furtherance of that plan and pursuant thereto defendants manufactured and sold a large quantity of awnings. The rights held by plaintiff and covered by the license contracts were dependent on an interest acquired by plaintiff in a patent granted to one Houseman. Another patent prior in time on the same construction had issued to one Matthews and at the time here in question was owned by National Ventilated Awning Company. At the time the first licensing agreement was entered into between plaintiff and defendants a suit was pending against another licensee under the Houseman patent on a claim that the Houseman patent infringed the Matthews patent and in that suit the Houseman patent was sustained in the trial court but on appeal was held to infringe. Thereupon plaintiff in the instant case sought a declaratory judgment in the federal court at Cleveland, Ohio, on the issue of infringement. That court in September 1948 held the Houseman patent infringed the Matthews patent and no appeal was perfected from that adverse judgment. Plaintiff then entered into a contract with the holders of the Matthews patent by which it acquired the right to use and license users to manufacture the type of awnings covered by the Matthews patent. In the meantime the holders of the Matthews patent had filed suit in the District Court for the Eastern District of Missouri against defendants in this suit charging them with infringing the Matthews patent and a temporary injunction was issued against defendants and at the time of trial of this suit was still in full force and effect. The license agreements here involved provided that if defendants were sued for infringement plaintiff would undertake the defense and when the holders of the Matthews patent instituted suit against defendants, plaintiff undertook the defense and continued to conduct it until May 1, 1949. Plaintiff, however, by its settlement agreement with the holders of the Matthews patent bound itself not to defend. The settlement agreement with the owners of the Matthews patent was without the approval of defendants, but plaintiff, pursuant to that agreement, caused its counsel to withdraw from the defense of the infringement suit pending against defendants.

By the terms of the license agreements between plaintiff and defendants, plaintiff agreed to give defendants the rights of manufacture and sale on any further awning patents it might acquire the use of, but in the settlement contract with the holders of the Matthews patent plaintiff agreed to conditions that made it impossible to carry out the provisions of license agreements with defendants, and in September, 1949, defendants served notice on plaintiff of cancellation of the license agreements. The

notice of cancellation contained the following recitals:

"After the Cleveland trial you advised us by letter that we should cease making ventilated roof awnings to avoid further liability by reason of the Matthews patent. * * *

"We made the necessary change in our tooling and manufacturing operation to avoid the Matthews liability. * * * Such has definitely not proven to be the case, and on March 18, 1949, the court enjoined us from manufacturing the awning construction for which we contracted with you.

"To make matters even worse, not only have you renounced your obligations to us, but in flagrant violation of your duties to us have joined forces with National against us. Your agreement with National is a conspiracy in violation of Anti-Trust laws and a direct violation of the agreement of March 16, 1946, between your company and ours."

It was the contention of defendants in the trial court that the awnings made by them subsequent to November, 1948, were of a type not covered by the license agreements with plaintiff and payments of royalties after that date were claimed by defendants to have been made because they thought the right to proceed under the contract with plaintiff had been halted only temporarily pending settlement of the Matthews patent controversy. Defendants in the trial court claimed to be the owners of the trade name "KoolVent" for use in the St. Louis Territory.

It appeared from the evidence and the court found that the essence of the dispute on the structure involved was an aluminum awning, the top of which had alternating pans so spaced as to permit air to circulate between the pans. The air circulation is the result of raising the top pans slightly and it was the air circulating feature that was held to infringe the Matthews patent. By "jamming" the pans the top pan was so lowered that the air could not circulate and this was directed to be done by plaintiff so as to avoid infringement of the Matthews patent. By thus changing the manufactured article defendants could manufacture only the jammed-pan awnings. The court found that:

"In the settlement of May 1, 1949, with Matthews, without any basis in truth, plaintiff held out that it 'controlled' the defense in the suit against defendants and there attempted to dispose of the case along with other litigation as follows:

" 'It is agreed that in order to dispose of the pending litigation involving KoolVent and in which litigation KoolVent is conducting and controls the defense for their several licensees * * *

" '(b) That consent decrees shall be entered in other pending suits comprised in Exhibit B attached hereto adjudging that the Matthews patent is valid and that the several defendants therein have infringed upon claims numbered 3, 4, 5, 9 and 10 of said patent; that injunction shall issue in each of said cases enjoining further infringement of said patent during the life thereof. * * *' "

The court found that plaintiff by virtue of its settlement with the holders of the Matthews patent acquired the right to enter into license agreements for the manufacture of open pan awnings, but did not offer the invention right thus acquired under the existing license contracts but informed defendants that they could obtain such rights only on surrendering their licenses and executing a new contract which not only increased the royalty to be paid but relieved plaintiff of a number of obligations contained in the outstanding license agreements and that the new license agreement tendered defendants varied in many respects from the rights acquired by plaintiff under the Matthews patent. The court specifically found that:

"Plaintiff contracted by the Matthews settlement to carry the ethics of the market place into the courtroom and have a lawyer state to the court that he is not only withdrawing as attorney in the case but, of more serious import, represent to the court that the cause he has theretofore represented is without merit. And without prior notice or knowledge on the part of the lawyer's record client, the defendants, that is

exactly what the lawyer for plaintiff did."[1]

The court also found that the sum due in royalty was not relied on by plaintiff at the time as justification for breaching the contracts and that it was no justification for the conduct of plaintiff; that the question of royalty was in dispute because of loss of rights of defendants to make and sell open panned awnings; that the agreement contemplated royalty only on a finished product, not parts, trade-mark or improvements separately; that defendants were and still are enjoined from making ventilated awnings by order of the United States District Court for the Eastern District of Missouri in a suit by the holders of the Matthews patent; that as a result of plaintiff's failure to comply with the terms of its contract with defendants relative to defending suits for infringement they have sustained damages by way of attorney fees and litigation expenses in the sum of $15,-271.21 constituting necessary and reasonable expenditures in connection with the defense of the patent infringement suits brought against it.

The court concluded as a matter of law that the plaintiff was bound to give defendants the right to use the open pan feature of the Matthews patent on acquiring such right; that plaintiff's arrangement with the Matthews interest to execute only a certain form of license constituted a breach of the agreements with defendants; that plaintiff's covenant to defend licensees was a dependent covenant, performance of which was a condition precedent to plaintiff's right to recovery; that plaintiff's conduct warranted the action taken by defendants in cancelling the license agreements; that while there may have been some royalties due at the time of cancellation that was no justification for the conduct of plaintiff; that the license agreements contemplated royalty only on finished products; that the finished product was the open pan awning authorized by the Houseman patent; that the loss of the declaratory judgment suit whereby defendants lost the right to make

and sell open pan awnings resulted in a partial eviction which was the substance of the consideration in the license agreements; that the right to manufacture and sell the open pan awnings was the monopoly which the parties contracted for and its loss constituted a substantial eviction and defendants had a legal right to rescind; that by reason of the breach of the license agreements and the substantial eviction of defendants of the rights in the Houseman patent "there only remains a shell of the former license agreements. To base the equitable remedy of specific performance on the parts that remain of the license agreements does not appeal to this court as the proper and just solution of the controversy between the parties." The court also concluded, "The plaintiff comes into court with unclean hands and is thereby barred from relief herein." The court also concluded that plaintiff was liable in damages for the amount which the defendants had expended as the result of the failure of plaintiff to comply with its license agreements. The court having determined all the controlling issues in favor of defendants entered judgment denying plaintiff's suit for specific performance and awarded defendants judgment on their counterclaim for $15,027.21, less $1,105.05 on account of an indebtedness due plaintiff for royalties accruing prior to the breach of the license contracts.

From the judgment thus entered plaintiff prosecutes this appeal and in seeking reversal sets forth the following as its points to be argued:

"(1) Defendants' present contentions are but the culmination of their scheme to appropriate plaintiff's patent and trade-mark property as their own, without any obligations or payments to plaintiff therefor, and to the exclusion of plaintiff from use of its own property. Such an evil scheme should not receive the imprimatur of a court of equity. A licensee may not appropriate his licensor's property by adverse possession occurring during the license.

---

1. The attorneys representing plaintiff-appellant in this court did not represent it in, nor were they connected with, the negotiations of settlement with NVA, and were in no manner responsible therefor.

"(2) A party already in default cannot cancel an agreement for the subsequent default of the other party. a) The quantum of the respective defaults of the parties does not change the foregoing principle.

"(3) A party to a license cannot claim eviction for events occurring two years prior to his claim, where his actions have demonstrated that he continued under the license taking a 'calculated risk.' Nor can a licensee claim eviction because prevented from use of only one of a number of the licensed inventions, when he continues to use all the rest, and continues to use the licensed trade-mark, and when the contracts contemplate the payment of royalty for the use of any of the licensed inventions. a) It is not incumbent upon the licensor to come to terms with the holder of the patent dominant to the patent of the license, since the existence and enforcement of such a dominant patent are normal hazards of the license.

"(4) The cancellation of a license agreement by a licensee is incomplete and ineffective where the licensee does not restore to the licensor what he holds under and by virtue of the agreement. a) There can be no surrender back of the licensed property, by implication or otherwise, when the licensee attempts to retain some of it and claims title thereto. b) The licensee of a trade-mark, establishing its use in a certain territory as a result of his rights under the license, can not claim title superior to that of his licensor.

"(5) A licensor agreeing to 'undertake the defense' of his licensee should the latter be sued by an outsider for infringement, discharges that obligation when he obtains a settlement from the outsider that can eliminate the licensee's liability, and offers the benefits thereof to the licensee.

"(6) Any breach of plaintiff's covenant to defend defendants in the NVA suits against defendants was not a breach going to the essence of the contract; and so, even had such breach existed, it would not have justified cancellation by defendants.

"(7) Defendants can not escape payment of royalties for the full term of the licenses, especially where they counter-claim for a concomitant alleged financial obligation of plaintiffs to them for such period. a) A licensee, especially one agreeing to a 'best efforts' clause, must pay royalties on all types of embodiments of the licensed inventions—here including jammed-pan awnings that embody some of the licensed inventions.

"(8) Defendants could not recover any damages for alleged breach of the covenant to defend incurred by defendants accrued after cancellation of the contracts by defendants (if there were such cancellation), and after defendants stopped payment of the royalties.

"(9) There is no evidence in this case to support the Lower Court's conclusion of law that plaintiff is in Court with unclean hands.

"(10) The errors of the Trial Court are so numerous and of such a character as to show that the entire decision, findings and conclusions of law are not reliable because they came out of a wholly erroneous approach to the case.

"(11) A licensor may have specific performance to assure continued observance by the licensee of the provisions of a license even if the licensee can not employ all of the licensed inventions, where the licensee continues to enjoy many privileges of the license. a) A license to use any of a group of inventions for a set royalty requires the set royalty regardless of which of the inventions be used."

With two possible exceptions these points do not challenge any specific finding of fact, conclusion of law, or ruling on the admissibility of evidence. For the most part they are declarations of abstract, general principles of law. Rule 11(b) Fourth of this court, which has reference to the contents of briefs, provides that the brief of appellant shall contain "A concise statement of each point to be argued, with a complete list of all cases and statutes referred to in the argument covering the point * * *." In E. R. Squibb & Sons v. Mallinckrodt Chemical Works, 8 Cir., 69 F.2d 685, 687, which was a patent suit, in referring to the assignments of error this court speaking through Judge Stone, among other things said:

"In short, the appellant has lumped into this assignment the entire case, except objections to evidence and no such objections are urged here or preserved in any assignment. All that this assignment amounts to is that a wrong decree was entered. It is a clear violation of rule 11 requiring that assignment of errors shall 'set out separately and particularly each error asserted and intended to be urged.'"

In Cohen v. United States, 8 Cir., 142 F.2d 861, 863, we considered the question of the sufficiency of points to be argued and there said:

"The purpose in requiring that appellant's brief contain a separate and particular statement of each point relied upon intended to be urged, is to point out to the appellate court the specific ruling or action of the trial court which is challenged as erroneous and to limit the presentation in the appellate court to the matters in the specifications as stated in the brief."

In Anderson v. Federal Cartridge Corporation, 8 Cir., 156 F.2d 681, 683, this court said:

"These points challenge no specific action or ruling of the court. The purpose of the rule requiring that appellant's brief shall contain a separate and particular statement of each point relied upon is to point out to the appellate court and to opposing counsel the specific ruling or action which is challenged as erroneous without going beyond the assignment itself, and to limit the presentation in the appellate court to the matters in the points or specifications as stated in the brief."

See, also: Hobbs-Western Co. v. Employers' Liability Assur. Corp., 8 Cir., 102 F.2d 32; Mill Owners Mut. Fire Ins. Co. v. Kelly, 8 Cir., 141 F.2d 763; American Ins. Co. v. Scheufler, 8 Cir., 129 F.2d 143; Twentieth Century-Fox Film Corp. v. Brookside Theatre Corp., 8 Cir., 194 F.2d 846.

Points which simply invite the court to search the record for error present no question for decision by this court. The points relied upon form the basis of the proceeding in this court and their function is by analogy similar to that of the plaintiff's complaint in the trial court.

Assignment No. 9 challenges the sufficiency of the evidence to sustain the lower court's conclusion of law that plaintiff is in court with unclean hands. The maxim is an ancient and favored precept of the equity court and the principle announced thereby is recognized as being a fundamental of equity jurisprudence. It imports that a litigant may be denied relief by a court of equity on the ground that his conduct has been inequitable. The same principle is expressed in the maxim, "He that hath committed inequity shall not have equity", and the thought inheres in the maxim, "He who seeks equity must do equity."

It appears from the evidence and the court found that the license contracts in terms conferred upon defendants the right to manufacture and sell the KoolVent awnings covered by the Houseman patent. This patent, however, infringed the Matthews patent. Although plaintiff had by its contracts and as a part of the consideration therefor agreed to defend all suits brought against defendants for infringement, this the plaintiff not only failed to do but aided and assisted the holders of the Matthews patent in their litigation against defendants. Plaintiff effected a settlement with the holders of the Matthews patent without the consent or approval of the defendants and the rights which it acquired by this settlement were not given to the defendants but instead defendants were offered new contracts on less advantageous terms and more advantageous to plaintiff than the original contracts although plaintiff had by its contracts agreed to give the defendants the advantage of all newly acquired rights or improvements which it was entitled to enjoy or convey by license to others. The trial judge, speaking of this contention, among other things said:

"That the settlement agreement (with NVA) went to such length in particularizing terms of the sublicenses which plaintiff could execute, suggests that plaintiff may have been the insti-

gator of such phases of the contract in order to get release from license contracts with defendants and others containing burdensome provisions."

■ We think the inferences thus drawn by the court were clearly warranted by the proven and admitted facts. It is to be noted too in this connection that the court by one of its findings states, "Plaintiff contracted by the Matthews settlement to carry the ethics of the market place into the court room and have a lawyer state to the Court that he is not only withdrawing as attorney in the case but, of more serious import, represent to the court that the cause he has theretofore represented is without merit. And without prior notice or knowledge on the part of the lawyer's record client, the defendants, that is exactly what the lawyer for plaintiff did." [2] The conclusion that plaintiff comes into court with unclean hands is, we think, amply supported by the evidence. Having come into court with unclean hands, it had no standing in a court of equity and the other contentions made by plaintiff are therefore immaterial to a decision of this case.

■ This was an action to enforce specific performance of license contracts. It was so considered by the trial court and it is so designated in plaintiff's opening brief. At the time it was filed what were the contracts involved? The contracts as originally executed authorized defendants to construct the KoolVent awnings as supposedly authorized under the Houseman patent. Defendants, however, were enjoined by the holders of the Matthews patent from continuing operations under the original license contracts. This injunction was in full force and effect at the time of the trial of this suit and it had been procured with the assistance of the plaintiff. Manifestly, the court could not have decreed the enforcement of the contracts under these circumstances. Again, these contracts had been breached by the plaintiff for its failure to defend against infringement and for its failure to grant defendants the advantages which it acquired under its contract of settlement with the holders of the Mat-

thews patent. A suit for specific performance can not be maintained unless the contract is definite and certain and the party seeking relief is himself free from inequitable conduct in connection with the contract sought to be enforced. What was said in Foster v. Goldschmidt, C.C., 21 F. 70, 71, is here apposite. It is there said:

"Concededly, if the complainant has refused to fulfill any of his obligations in matters of substance under the license, a court of equity will not interfere to assist him in compelling defendants to observe the obligations upon their part."

In Shubert v. Woodward, 8 Cir., 167 F. 47, 57, this court said:

"The issue of an injunction, like the specific performance of a contract, rests in the judicial discretion of a court of equity. It is not a matter of right, and the application for it is addressed to the conscience of the chancellor. It is an indispensable condition of a decree for the specific performance of a contract and of the issue of an injunction against its breach that the moving party has not been guilty of a substantial violation of it himself. He who seeks equity must come into court with clean hands."

■ Here plaintiff is not seeking to enforce the contract as actually made by the parties but is seeking to have the court of equity make a new contract for the parties and then enforce it. This the court will not do. We are clear that regardless of whether or not the defendants by service of notice of cancellation effected such cancellation, the plaintiff is not entitled to a decree of specific performance, especially in view of the unchallenged findings of the court as set out in this opinion.

■ The trial court awarded defendants damages on their counter-claim by way of attorney fees and litigation expenses paid by defendants in connection with the defense of the patent infringement suits. In its points to be argued plaintiff urges that defendants could not recover any damages

2. See Note 1, supra.

for alleged breach of covenant to defend incurred by defendant which accrued *after* cancellation of the contracts by them. In argument, however, it is now urged that no attorney fees whatever should have been allowed. The question as to whether attorney fees for services rendered *after* the alleged cancellation could not properly be allowed was not specifically called to the attention of the trial court and hence can not be urged here. The court in its findings did not specify whether the attorney fees were for services rendered before or after defendant's attempted cancellation of the contracts. They were simply allowed in a lump sum and we can not say that the finding is clearly erroneous. The argument that *no* attorney fees should have been allowed is not before us because not within the coverage of the points to be argued.

The infringement suits were confessedly all brought prior to any claim on the part of defendants that the contracts had been cancelled and it was then incumbent upon plaintiff to bear the expense of defending these infringement suits.

The judgment appealed from is therefore affirmed.