UNITED STATES *v.* CLARKE.

*(District Court, E. D. Missouri, E. D.* May 18, 1889.)

1. POST-OFFICE—NON-MAILABLE MATTER—OBSCENE PUBLICATIONS.
   The word "obscene," within the meaning of act September 26, 1888, (25 U. S. St. 496,) forbidding the sending of non-mailable matter through the mails, when used to describe a book, pamphlet, or paper means a publication containing immodest and indecent matter, the reading whereof would have a tendency to deprave or corrupt the minds of those into whose hands the publication might fall whose minds are open to such immoral influences.

2. SAME—"LEWD" PUBLICATION.
   A "lewd" book, pamphlet, or paper, within the meaning of the statute, is one that describes dissolute or unchaste acts, scenes, or incidents, or one the reading whereof, by reason of its contents, is calculated to excite lustful and sensual desires in those whose minds are open to such influences.

3. SAME—"LASCIVIOUS" PUBLICATION.
   The word "lascivious," within the meaning of the statute, is synonymous with the word "lewd."

4. SAME—PARTS OF PUBLICATION OBSCENE.
   If the effect of pamphlets and papers sent through the mails, as a whole, would be to deprave and corrupt the minds of those into whose hands they might come whose minds are open to such influences, or to excite lustful or sensual desires, they are obscene and lewd, whether such effect on the minds of readers is produced by single passages or portions of them, or by many passages or portions.

Indictment for Sending Obscene Matter through the Mails.

The matter complained of was—*First*, a small pamphlet in paper cover, entitled "Dr. Clarke's Treatise on Venereal, Sexual, Nervous, and Special Diseases," and consisted mainly of a description of the causes and effects of venereal diseases; and, *secondly*, of two circulars, one of which described in separate paragraphs the symptoms of various venereal diseases, and the other contained a list of questions to be answered.

*Thomas P. Bashaw*, U. S. Dist. Atty.

*Chester H. Krum*, for defendant.

Thayer, J., (*charging jury*.) The admission having been made during the course of the trial that the defendant caused the pamphlet and two other papers referred to in the indictment and offered in evidence to be deposited in the St. Louis post-office for mailing to the several persons to whom they were addressed, the sole question that remains for you to consider and determine is whether the pamphlet and papers are obscene, lewd, or lascivious. If they were obscene, lewd, or lascivious, then they were non-mailable matter, and an offense was committed in causing them to be deposited in the post-office for mailing. Now the question arises, what is an obscene, lewd, or lascivious publication within the meaning of the statute? I propose to define those terms as well as possible, and leave you to determine in the light of such definitions, and all the circumstances of the case, whether they fall within the definitions I shall give.

The word "obscene" ordinarily means something that is offensive to chastity, something that is foul or filthy, and for that reason is offensive to pure-minded persons. That is the meaning of the word in the concrete. But when used, as in the statute under which this indictment is framed, to describe the character of a book, pamphlet, or paper, it means a book, pamphlet, or paper containing immodest and indecent matter, the reading whereof would have a tendency to deprave and corrupt the minds of those into whose hands the publication might fall whose minds are open to such immoral influences. *U. S.* v. *Bennett*, 16 Blatchf. 338; *Queen* v. *Hicklin*, L. R. 3 Q. B. 371. A lewd book, pamphlet, or paper, within the meaning of the statute, is one that describes dissolute and unchaste acts, scenes, or incidents, or one, the reading whereof, by reason of its contents, is calculated to excite lustful and sensual desires (that is to say, a desire for the gratification of the animal passions) in those whose minds are open to such influences. The word "lascivious" is very nearly synonymous with the word "lewd;" so nearly so that I will not undertake to draw a distinction between the two words. For the purposes of this case it may be said that if the pamphlet and papers involved are not lewd or obscene in the sense that I have defined those terms, then they are not lascivious, and you need give yourselves no further concern about the exact meaning of that word. In view of what has been said it follows that, if you are satisfied beyond a reasonable doubt that the pamphlet and papers, in question in this case, contain such immodest, indecent, or filthy matter that the reading thereof would tend

to deprave and corrupt the minds of those persons into whose hands the same might fall whose minds are open to such influences, then you should find the defendant guilty. Or if you are satisfied beyond a reasonable doubt that the subject-matter of the pamphlet and papers is of such character as would tend to excite lustful and sensual desires in the minds of those persons into whose hands they might come, whose minds are open to influences of that sort, then you should find the defendant guilty. If you find that the pamphlet is obscene or lewd, and that the other papers are not, or, *vice versa*, that the papers are obscene or lewd and the pamphlet is not, you can return a verdict against the defendant on some counts, and in his favor in others, according as you find the character of the several publications to be.

These are as precise definitions and directions as it is possible for me to give. The case is one that addresses itself largely to your good judgment, common sense, and knowledge of human nature, and the weaknesses of human nature. You must consider carefully the contents of the pamphlet and papers in the first instance, and then the effect that the reading of such contents would naturally have on that class of persons into whose hands the publications might fall, whose thoughts, emotions, or desires are liable to be influenced or directed by reading matter such as the publications contain. There is to be found in every community a class of people who are so intelligent or so mature that their minds are not liable to be affected by reading matter, however obscene, lewd, or indecent it may be. Then there is another large class to be found in every community—the young and immature, the ignorant, and those who are sensually inclined—who are liable to be influenced to their harm by reading indecent and obscene publications. The statute under which this indictment is framed was designed to protect the latter class from harm, and it is a wholesome statute. Hence, in judging of the tendency of the publications to deprave and corrupt the mind, or to excite lustful or sensual desires, (which are the tests of obscenity and lewdness,) you should consider the effect that the publications would have on the minds of that class of persons whom the statute aims to protect, and the liability of the publications to get into the hands of that class of persons, rather than the effect such publications would have on people of a high order of intelligence, and those who have reached mature years, who by reason of their intelligence or years are steeled against such influences. As I said before, you must bring your common sense and knowledge of human nature and its weaknesses to the consideration and determination of these questions.

Now, gentlemen, there are a few incidental matters which I feel bound to notice in view of what has occurred during the trial. In the first place, you must not allow the fact that defendant advertises his calling quite extensively in the newspapers to prejudice your view of the case. You have nothing whatever to do with a question of professional ethics of that sort. The defendant has a right to advertise his calling if he so desires, and that is not an offense in the eye of the law. If the publications which he deposited in the mail are neither obscene, lewd, nor

lascivious in your opinion, he is entitled to a verdict of acquittal; and you must not allow your attention to be diverted from the real matter in issue, or your minds to be prejudiced, by any extraneous considerations of the kind to which I have last alluded. The question whether defendant is a licensed physician under the laws of the state is immaterial. In the second place, gentlemen, I desire to say that I have no doubt that under the statute under which this indictment is framed standard medical works (and by that I mean works that are studied and consulted by physicians, and are kept in medical and public libraries) may lawfully be sent through the mail to persons who buy or call for them for the purpose of seeking information on the subjects of which they treat. But I feel bound to say that, in my opinion, there is no evidence in this case that would warrant you in finding that the publications complained of in the indictment are standard medical works or publications. Furthermore, gentlemen, I have no doubt that persons may lawfully communicate through the mails with their physicians by describing symptoms of their physical ailments, habits, and practices, and asking professional advice in relation thereto; and I have no doubt that in response to such inquiries a physician may lawfully advise a patient through the mails with respect to the subject-matter of such communications. But I feel bound to say that, in my opinion, there is no evidence that would warrant you in finding that the publications complained of in this case, were sent by a physician to his patient in response to a request for such publications as were sent, and that the mailing of them to the parties named in the indictment was justified as being a communication by a doctor to his patient. Therefore, gentlemen, you will decide the issue with respect to the obscene and lewd character of the publications, unembarrassed by any consideration of the two defenses last alluded to, which might be appropriate in certain cases, but are not applicable to this case.

There is another fact to which it is necessary to allude. The defendant's counsel, for the purpose of enforcing his view that the publications complained of are neither obscene or lewd, has read in the course of his argument certain passages from certain well-known authors,—from Shakespeare, Sterne, Suetonius,—and even from the Bible. The passages read, taken in connection with their context, may be, or may not be, obscene or indecent. You are not trying that question, and you are not called upon in this case to determine, nor will your verdict in this case (whether it is guilty or not guilty) decide whether the Bible, Shakespeare, Sterne, and Suetonius must be excluded from the mails. I trust you will not allow any consideration of the possible tendency of your verdict to exclude other standard literary works from the mails, to prevent you from passing an honest judgment upon the question you have to decide in this case,—whether the pamphlet and papers complained of are obscene or lewd, and tend to corrupt and deprave the minds of readers. Of course, so far as your experience goes of the effect that Shakespeare's writings, or any other author's writings, have had on the world, notwithstanding certain passages that they con-

tain, you have the right to resort to that experience in determining what will be the probable effect of the publications involved in this case, providing you think such comparison, or a reference to such experience, will be of any service, and will aid you in reaching a correct conclusion. I think this is all that is necessary to be said in this case. I ask you to consider the case fairly, and decide the issue that I have defined as to the character of these publications, according to your honest judgment of the effect that such publications will have on the minds of those that read them.

The jury impaneled in this cause, after retiring, returned into court, and submitted to the court the following question, to-wit:

"If the jury find any portion of the book, pamphlet, or circular obscene, lewd, etc., would such finding be sufficient grounds for them to condemn the whole book, pamphlet, or circular? W. S. HUMPHREYS, Foreman."

Thereupon the court further instructed the said jury as follows, to-wit:

"If the effect of the pamphlet and papers as a whole would be to deprave and corrupt the minds of those into whose hands they might come whose minds are open to such influences, or to excite lustful or sensual desires, then the pamphlets and circulars should be found to be obscene and lewd, whether such effect on the minds of readers is produced by single passages or portions of the pamphlets and circulars, or by many passages or portions."

The jury returned a verdict of guilty on all counts.