Irene McGREW et al., Plaintiffs,

v.

CITY OF JACKSON, MISSISSIPPI, et al., Defendants.

Civ. A. No. 4384.

United States District Court
S. D. Mississippi,
Jackson Division.

Dec. 31, 1969.

Earl T. Thomas, Alex A. Alston, Jr., Charles R. Davis, Thomas A. Coleman, Jackson, Miss., for plaintiff.

Will S. Wells, Asst. Atty. Gen., Robert G. Nichols, Jr., City Pros. Atty., E. W. Stennett, City Atty., John R. Countiss, III (Special Counsel), Thomas H. Watkins (Special Counsel), Jackson, Miss., for defendants.

Before RIVES, Circuit Judge, and COX and NIXON, District Judges.

WILLIAM HAROLD COX, District Judge:

The plaintiffs, as operators of a motion picture show in Jackson, Mississippi, brought this suit against the defendants to enjoin the enforcement of a state obscenity statute against a public showing of a film called "The Fox." This criminal proceeding was instituted before the police justice of the municipality as an ex officio Justice of the Peace in such state case. The state of Mississippi is not made a party to this suit. We are not confronted in this case with any of the problems raised in the cases involving the obscenity of books and written materials. The state of Mississippi simply instituted a criminal action against the plaintiffs for a public showing as entertainment of a moving picture show with synchronized dialogue of the characters on the screen with accompanying sound effects.

The plaintiffs first filed this suit in this Court to enjoin this criminal prosecution in the state court and for declaratory judgment relief and damages. Upon a full hearing by the Court, that temporary injunction was denied and no appeal was taken. Thereupon the plaintiffs applied to the Court for leave to file an amended complaint seeking to have this state statute [1] declared void on

1. Section 2286 Mississippi Code 1942 provides: "It shall be unlawful for any person, firm or corporation, owning or operating any moving picture show or moving picture establishment, in this state, to show, or exhibit to public view on a screen or otherwise, any obscene, indecent, or immoral picture, drawing or print, provided such picture, drawing or print is not being exhibited under the auspices of health authorities for educational purposes. Any person, firm or corporation owning or operating any moving picture show or moving picture establishment in this state, violating this section shall be guilty of a misdemeanor and on conviction shall be punished by a fine of not less than twenty-five dollars nor more than one hundred dollars, or by imprisonment for not more than sixty days or both."

its face or as applied; and for injunctive relief against such criminal prosecution, and for a declaratory judgment as to their rights in the premises and for redress for damages. The right to file such amended complaint was granted and this three-judge court was promptly designated and organized. The validity vel non of this state statute on obscenity lies at the threshold of this decision. The nature and character of this exhibition and its natural impact upon any decent audience of good law abiding citizens distinguishes itself readily from the principles and contentions relied upon by plaintiffs and vigorously pressed upon the Court throughout this case.

On November 1, 1968, two police officers and the city prosecuting attorney as paid guests visited the public showing by plaintiffs of the film known as "The Fox" in a local theater; and at the conclusion of the showing, the police officers arrested the individual plaintiffs and seized the entire film without any warrant of arrest or seizure. Mississippi does not have any statutory provision for censorship, or licensing of such motion picture films as a condition precedent to their showing. Accordingly, there was no predetermination by any judicial officer, or body as to the obscenity, or not of this film. There was likewise no application made, or granted for the issuance of a search warrant with its incidental prerequisite determinations. The Mississippi statute authorizes an officer to make an arrest at any time without a warrant for a misdemeanor committed in his presence.[2] Accordingly, these police officers duly arrested the plaintiffs for this misdemeanor committed in their presence after viewing the entire film, and seized the film as an instrument, or vehicle of the offense for violating this statute. The plaintiffs were promptly charged in the Magistrate's court with a violation of this obscenity statute. The plaintiffs were convicted of a violation of this statute in the Magistrate's court on a plea of nolo contendere from which judgment of conviction they appealed to the County Court of Hinds County where the case was tried anew on its merits before a jury, resulting in a judgment of acquittal of the individual plaintiffs and a mistrial as to the corporate plaintiff. The plaintiffs seek by their complaint in this court of equity a vindication of their defiance of this state criminal statute in the operation of their business, and seek a return to them of the film taken from them upon their arrest for such offense. Significantly, the plaintiffs made no effort to prove that the defendants did not act in perfect good faith in making this arrest and seizure of this film and consequent trial to determine their guilt or innocence. The Court viewed "The Fox" film in its entirety in furtherance of its desire to know all of the facts and surrounding circumstances in a full-scale trial of this case before it on its merits.

2. Section 2470 Mississippi Code 1942 (Chapter 355 Laws 1968) Arrests—when made without warrant—provides: "An officer or private person may arrest any person without warrant, for an indictable offense committed, or a breach of the peace threatened or attempted in his presence; or when a person has committed a felony, though not in his presence; or when a felony has been committed, and he has reasonable ground to suspect and believe the person proposed to be arrested to have commited it; or on a charge, made upon reasonable cause, of the commission of a felony by the party proposed to be arrested. And in all cases of arrests without warrant, the person making such arrest must inform the accused of the object and cause of the arrest, except when he is in the actual commission of the offense, or is arrested on pursuit.

"Any law enforcement officer may arest any person on a misdemeanor charge without having a warrant in his possession when a warrant is in fact outstanding for that person's arrest and the officer has knowledge through official channels that the warrant is outstanding for that person's arrest. In all such cases, the officer making the arrest must inform such person at the time of the arrest the object and cause therefor. If the person arrested so requests, the warrant shall be shown to him as soon as practicable."

At the outset, the Court finds from the undisputed testimony and evidence in this case that this is not in any respect a *Dombrowski* case.[3] The defendants in this case on the contrary acted in perfect good faith in arresting the plaintiffs, and in seizing the offending film and in charging these plaintiffs with a violation of this obscenity statute by such public showing of that film at this theater in Jackson as they did.

There is not present in this case any trace of intimidation, or pressure, discrimination or other action designed or calculated to deny, or abridge any constitutional right of any plaintiff herein. Unlike *Dombrowski*, this obscenity statute has never been declared void, and it is not shown in this case that these officers had no reasonable expectation of success in this prosecution for such offense; and it was not shown that any action in this case was motivated solely by an intent on the part of these officers to harass, intimidate and oppress these plaintiffs by this criminal action. The decision of this Court on the questions before it is not unanimous, but a majority of the judges of this Court are of the opinion that this obscenity statute in suit is constitutional, both on its face and as applied.

██ The validity of this statute is assailed for vagueness and overbroadness. Those contentions are tenuous and untenable. We are not dealing with a censorship statute, or a licensing statute as plaintiffs seem to suppose and contend. On the contrary, this obscenity statute clearly applies to this sexy Fox picture and proscribes a public display by these plaintiffs of such an obscene picture. These plaintiffs by this suit in this Court of equity voluntarily assumed all of the burdens incident to their complaint for extraordinary relief from this criminal prosecution by reason of alleged irreparable damages. Yet, no plaintiff bothered to testify in this case that he or she did not clearly understand exactly what this obscenity statute proscribed in connection with the showing of this Fox film. Surely, no informed person would seriously contend that a criminal obscenity statute to be valid has to precisely describe the crime, and incorporate all of the judicial tests for a proper determination as to the guilt, or innocence of the offense. That is not the office, or function of a criminal statute. Such a statute simply must impart sufficient notice and warning of the crime to accord the offender as a reasonable person an opportunity to avoid its commission. That was duly done in this case, and such fact is not in any wise denied or even questioned. The rule is that the statute must be couched in language sufficiently definite to convey warnings as to proscribed conduct as measured by common understanding and practice. That is the *Roth* rule.[4]

---

3. Dombroski, et al. v. Pfister, etc., et al., 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed. 2d 22.

4. In Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 said: "Many decisions have recognized that these terms of obscenity statutes are not precise. *This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process.* ' * * * The Constitution does not require impossible standards;' all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices * * *.' United States v. Petrillo, 332 U.S. 1, 7–8, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877. These words, applied according to the proper standard for judging obscenity, already discussed, give adequate warning of the conduct proscribed and mark ' * * * boundaries sufficiently distinct for judges and juries fairly to administer the law * * *. *That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense * * *.*' Id., 332 U.S. at page 7, 67 S.Ct. at page 1542. See also United States v. Harriss, 347 U.S. 612, 624, note 15, 74 S.Ct. 808, 815, 98 L.Ed. 989; Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed.

Under the rules announced by the Supreme Court governing a decision in these obscenity cases, the statute under attack cannot be justly said to be vague, or overbroad. The fact that this criminal statute does not contain any built-in guidelines, or definitions as to obscenity does not offend any principle of due process. The obscenity test stated in *Roth* is: "Whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest" in sex. (354 U.S. at page 489, 77 S.Ct. at page 1311. It would be a relatively simple matter to try a criminal case under this statute by proper instructions which would define the offense and give the tests necessary to be applied in a determination as to the existence or not of the offense. The jury would be instructed in such a case that the state must establish three elements to prove the existence of the offense and that those three elements must co-exist, viz: (1) That the dominant theme of the matter taken as a whole appeals to the prurient interest in sex; (2) That the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; (3) That the material is utterly without redeeming social value.[5]

The plaintiffs contend, however, that the statute is void because it contains no requirement as to scienter. This idea is derived from the application of obscenity statutes to books for sale on the shelf of a dealer. Surely, if this were such a case, the Court would simply instruct the jury as to the necessity for a joint union of action and intent in every criminal case as it does. A dealer could not be reasonably expected to know the contents of each book on his shelf for sale, and it would be incumbent upon the state to prove guilty knowledge of such obscene material in one of his books as a condition precedent to conviction. That is good law and good common sense, but it does not establish the contention that any such detail be found in the statute itself. These plaintiffs are inferentially contending that they had no guilty knowledge of the obscenity of some of the revolting scenes depicted in this picture. These people simply cannot conceal their guilt behind the sham of a calloused conscience and base sense of common decency and propriety.

This state obscenity statute is neither vague nor overbroad. The fact that it applies in the delicate area of freedom of speech under the First Amendment certainly invokes extreme care and caution in its proper application, but does not forestall a conviction in a proper case where the proper tests are applied thereto.[6]

---

367; United States v. Ragen, 314 U.S. 513, 523–524, 62 S.Ct. 374, 378, 86 L.Ed. 383; United States v. Wurzbach, 280 U.S. 396, 50 S.Ct. 167, 74 L.Ed. 508; Hygrade Provision Co. v. Sherman, 266 U.S. 497, 45 S.Ct. 141, 69 L.Ed. 402; Fox v. State of Washington, 236 U.S. 273, 35 S.Ct. 383, 59 L.Ed. 573; Nash v. United States, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232."

5. A Book Named "John Cleland's Memoirs Of A Woman Of Pleasure" v. Attorney General of Commonwealth of Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 977, 16 L.Ed.2d 1.

6. That contention was made and rejected in Cameron, et al. v. Johnson, etc., et al., 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182, which held that § 2318.5 Mississip-

pi Code 1942 prohibiting any one to: "Obstruct or unreasonably interfere with free ingress or egress" from public buildings was neither vague nor overbroad. The Court further said in quoting from Cox v. Louisiana, 379 U.S. 559, 85 S.Ct. 476, at 481, 13 L.Ed.2d 487 that: "A valid law dealing with conduct subject to regulation so as to vindicate important interests of society and the fact that free speech is intermingled with such conduct *does not bring with it constitutional protection.*" The Court said that the statute was not so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, which is the test.

This case does not present any novel questions of law. It is purely and simply another obscenity case wherein these plain-

The arresting officers in this case viewed this entire film as did this Court, and received the full impact of its sordid and bizarre character when viewed in context with all of the surrounding facts and circumstances and inescapable inferences so skillfully injected into this picture for visual and auditory digestion. Such action simply cannot be compared with a case involving only obscene literature. The case here is vastly more dramatic and impressionable and is driven home by skillful acting and sound effects which leave nothing to the imagination. The statute condemning such a picture as not being within acceptable standards of propriety and decency is neither vague nor overbroad. Section 2286 Mississippi Code 1942 is a valid and constitutional statute, both on its face and as applied in this case.[7] The plaintiffs here fully exploited the obscene and salacious character of this picture. The local newspapers would not advertise it, but the notice of its showing required a patron to call the theater for details and children under seventeen years of age were not admitted to the show. These surrounding facts and circumstances are all elements for consideration by the Court in connection with the fact that the book on which it is based does not contain any of the objectionable material. It is of no consequence that the entire picture is not obscene, but that several scenes are extremely repulsive and offensive and contaminate the show as an entirety. Ginzburg et al. v. United States, 383 U.S. 463, 474, 86 S.Ct. 942, 949, 16 L. Ed.2d 31 says: "We perceive no threat to First Amendment guarantees in thus

tiffs seek to escape from their plight by claiming sensitive First Amendment rights of free speech. There is not one word in this entire record from these plaintiffs to show this Court what free speech was involved in their pandering of these films with their revolting sex scenes. That seems to be the standard hue and cry always injected as a defense in this kind of case, and even the pronouncements of the Court in these cases are always sought by those of different viewpoints and interest and position, to say that it contained some extraneous motivating influence, or that the Court did not have before it this or that question. That sort of defense was interposed in the *Roth* case which involved a postal violation, but Alberts v. State of California (a companion case to Roth), reported in 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, was a criminal case which came from the state of California and the opinion of the Court in this case was an announcement of the law by the Court in the entire case. That case involved First Amendment rights. The *Cameron* case from this Court likewise involved First Amendment rights, the vagueness doctrine and the overbroad theory was leveled at a state statute, and in each instance the statute was upheld and the extraordinary relief by injunction from a criminal charge was denied. Significantly, Douglas, et al. v. City of Jeannette, et al., 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324, involved delicate First Amendment rights. On the same day of that decision, the Supreme Court in

Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292, 146 A.L.R. 81 held that hand bill ordinance unconstitutional. Yet, as the Court said in Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444: "Comity between the federal and Pennsylvania courts was deemed sufficient reason to justify the holding that 'in view of the decision rendered today in Murdock * * * we find no ground for supposing that the intervention of a federal court, in order to secure petitioner's constitutional rights, will be either necessary or appropriate.'"

In United States of America v. Spock, (1CA), 416 F.2d 165, the Court said of 50 U.S.C.A. Appendix 462(a), (defining offenses and penalties under the universal Military Training and Service Act) which provides as a crime: "Or who knowingly counsels, aids, or abets another to refuse or evade registration or service in the armed forces or any of the requirements of this title, or of said rules, regulations or directions, etc.," is not overbroad or vague.

7. United States v. Rebhuhn (2CA), 109 F.2d 512, 514, certiorari denied 310 U.S. 629, 60 S.Ct. 976, 84 L.Ed. 1399; Rosen v. United States, 161 U.S. 29, 16 S.Ct. 434, 480, 40 L.Ed. 606; United States v. Roth, 2 Cir., 237 F.2d 796, affirmed Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498; Mishkin v. State of New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56.

holding that in close cases evidence of pandering may be probative with respect to the nature of the material in question and thus satisfy the Roth test."

■■ The dominant theme of "The Fox" film is sex in a raw state in a product which the producers have attempted to whitewash and clean up just sufficiently to possibly escape condemnation as utter filth. The Supreme Court does not censor these materials, but must necessarily examine each one of them to determine for itself as to its obscenity or not. In the *Roth* case, the test was as to whether or not to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to the prurient interest. Obscenity is excluded from constitutional protection. "The Fox" film is synthetically designed and intended not to deal with sex in a manner to advocate ideas, or in a way that has any literary, or scientific, or artistic value or other form of social importance, but sex is employed in this picture solely as a box office pitch to the morbidly curious as a breach of all rules of common decency, human dignity and propriety. This is not a question which is addressed to a test based upon particular local community standards, but to the society at large and the public or people in general. An expression by the Court in the delicate area of First Amendment rights wherein constitutional limits of free expression in the nation cannot vary with state lines. It must be determined by a test which employs a national standard and is not a subject which can be properly addressed to an expert witness, but is addressed to the Court as the repository for the incident responsibility. The film protected Jacobellis v. State of Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L. Ed.2d 793 ("The Lovers"), reviewed by the Supreme Court, which said that the reel involved an affair between a woman bored with her marriage who had abandoned her husband for a younger man and that the last reel most severely criticized simply displayed "an explicit love scene." That nicety of characterization simply does not fit as a description of the lurid and carnal scenes in "The Fox" which so far exceeded all bounds of propriety and common decency by any standards. "The Fox" is a classic case of hard core pornography wherein sex is pandered solely for profit.

■ The plaintiffs seek injunctive relief from this Court to enjoin the defendants from prosecuting any criminal proceeding against them under this obscenity statute. 28 U.S.C.A. § 2283— stay of state court proceedings provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgment." Congress has not expressly authorized the injunction in this case. An injunction is not necessary in aid of this Court's jurisdiction, or to protect, or effectuate its judgment in this case. Literally there is in existence no exception to this Congressional mandate to this Court. If there be an exception to its application where the suit involves an overriding First Amendment right, such as is depicted in *Dombrowski*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22, this is most emphatically not a *Dombrowski* case. There is not a shred of evidence before the Court in this case to show that any irreparable damage of any kind will be visited upon these plaintiffs by a denial of this very extraordinary relief. It is not a case where any First Amendment rights will be chilled, or deferred, or postponed in enjoyment by requiring these people to stand trial as to their guilt or innocence of this offense in a state court before a state jury. There is an absolute dearth of evidence before this Court: To show that plaintiffs are threatened with any injury other than that incidental to any criminal action brought in good faith to determine guilt or innocence; to show the existence of any substantial loss, or impairment of any First Amendment freedom awaiting state court disposition of the case and

ultimate review on appeal; to show any imponderables or contingencies to exist which would inhibit the full exercise of First Amendment freedoms during criminal prosecutions. The Court finds that these plaintiffs have not shown by a preponderance of the evidence the existence of any such fact, circumstance or condition entitling them to an injunction in this case. The evidence does not establish the existence of any irreparable injury entitling plaintiffs to any extraordinary relief by injunction.

The nature and character of this suit must be borne in mind. These plaintiffs bring this suit in equity to enjoin the enforcement of a criminal statute in the state and not only seek vindication from the wrong of which they are accused, but seek a return of the instruments of the offense. Yet, not a one of these plaintiffs bothered to take the stand and testify under oath as to any fact or circumstance which would vindicate them of this wrong. This is not a criminal case, but is a civil suit where these plaintiffs have assumed the burden of proof of showing by the greater weight of the more convincing evidence that this statute is devoid of all of the attributes which would support its validity. Yet, neither of these plaintiffs has said a word in this record to assail this statute, or uphold their right under the general rules of law in this case to show this film to the public. When a plaintiff so dismally fails to even attempt to shoulder and bear his burden of proof, this Court must assume that they have done nothing to that end because they could not do so. Surely, if anybody could have produced any such proof, these experienced and intelligent people could have come forward with at least some such proof. When a litigant has the duty and the ability to come forth with more cogent and more convincing proof than is produced before the Court, it must be presumed that such proof was non-existent, or if any proof on the question were available to them that it would have been produced, but for the fact that it would have been hurtful to them.

It must be borne in mind throughout this case that obscenity is not within the protection of the First Amendment to the United States Constitution under all of the authorities. These plaintiffs have no First Amendment rights to display filth and hard core pornography to the general public as entertainment. There is no trace of anything artistic anywhere to be found in this obscene film. The Congress has enacted § 2283 of the Code as a declaration of public policy to be followed in all United States courts. Congress has not expressly authorized an injunction under the facts and circumstances in this record. An injunction here is not necessary to aid its jurisdiction or to protect any judgment of this Court in this case. The general rule in such case, of which this solemn act of Congress is a rescript, is that imminence of prosecution, *even though alleged to be in violation of constitutional guarantees* is not a ground for equity relief since the lawfulness or constitutionality of the statute on which prosecution is based may be determined as readily in the criminal case as in a suit for injunction.[8]

8. Spielman Motor Sales Co., Inc. v. Dodge (1935), 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322, says: "The general rule is that equity will not interfere to prevent the enforcement of a criminal statute even though unconstitutional. Hygrade Provision Co. v. Sherman, 266 U.S. 497, 500, 45 S.Ct. 141, 69 L.Ed. 402. See, also, In re Sawyer, 124 U.S. 200, 209–211, 8 S.Ct. 482, 31 L.Ed. 402; Davis & Farnum Manufacturing Co. v. [City of] Los Angeles, 189 U.S. 207, 217, 23 S.Ct. 498, 47 L.Ed. 778. To justify such interference there must be exceptional circumstances and a *clear showing* that an injunction is necessary in order to afford adequate protection of constitutional rights. See Terrace v. Thompson, 263 U.S. 197, 214, 44 S.Ct. 15, 68 L.Ed. 255; Packard v. Banton, 264 U.S. 140, 143, 44 S.Ct. 257, 68 L.Ed. 596; Tyson & Bros. United Theatre Ticket Offices v. Banton, 273 U.S. 418, 428, 47 S.Ct. 426, 71 L.Ed. 718, 58 A.L.R. 1236; Cline v. Frink Dairy Co., 274 U.S. 445, 452, 47 S.Ct. 681, 71 L.Ed. 1146; Ex parte Young, 209 U.S. 123, 161, 162, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.,N.S.,

932, 14 Ann.Cas. 764. We have said that it must appear that 'the danger of irreparable loss is both great and immediate;' otherwise, the accused should first set up his defense in the state court, even though the validity of a statute is challenged. There ample opportunity for ultimate review by this Court of federal questions. Fenner v. Boykin, 271 U.S. 240, 243, 244, 46 S.Ct. 492, 493, 70 L.Ed. 927."

Beal v. Missouri Pac. R.R. Corporation, (1940) 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577 says: "It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions. In re Sawyer, 124 U.S. 200, 211, 8 S.Ct. 482, 488, 31 L.Ed. 402; Davis & Farnum Mfg. Co. v. [City of] Los Angeles, 189 U.S. 207, 23 S.Ct. 498, 47 L.Ed. 778; Hygrade Provision Co. v. Sherman, 266 U.S. 497, 500, 45 S.Ct. 141, 69 L.Ed. 402. No citizen or member of the community is immune from prosecution, in good faith, for his alleged criminal acts. The imminence of such a prosecution even though alleged to be unauthorized and hence unlawful is not alone ground for relief in equity which exerts its extraordinary powers only to prevent irreparable injury to the plaintiff who seeks its aid. Terrace v. Thompson, 263 U.S. 197, 214, 44 S.Ct. 15, 17, 68 L.Ed. 255; Packard v. Banton, 264 U.S. 140, 143, 44 S.Ct. 257, 258, 68 L.Ed. 596; Tyson & Bro. [United Theatre Ticket Offices] v. Banton, 273 U.S. 418, 428, 47 S.Ct. 426, 427, 71 L.Ed. 718, 58 A.L.R. 1236; Cline v. Frink Dairy Co., 274 U.S. 445, 452, 47 S.Ct. 681, 682, 71 L.Ed. 1146. This is especially the case where the only threatened action is the prosecution in the state courts by state officers of an alleged violation of state law, with the resulting final and authoritative determination of the disputed question whether the act complained of is lawful or unlawful. Harkrader v. Wadley, 172 U.S. 148, 19 S.Ct. 119, 43 L.Ed. 399; Spielman Motor [Sales] Co. v. Dodge, 295 U.S. 89, 95, 55 S.Ct. 678, 680, 79 L.Ed. 1322. The federal courts are without jurisdiction to try alleged criminal violations of state statutes. The state courts are the final arbiters of their meaning and appropriate application, subject only to review by this Court if such construction or application is appropriately challenged on constitutional grounds. Hygrade Provision Co. v. Sherman, supra; Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927. Hence interference with the processses of the criminal law in state courts, in whose control they are lodged by the Constitution, and the determination of questions of criminal liability under state law by federal courts of equity can be justified only in most exceptional circumstances, and upon clear showing that an injunction is necessary in order to prevent irreparable injury. Cf. Hygrade Provision Co. v. Sherman, supra; Cline v. Frink Dairy Co., supra; Spielman Motor Sales Co. v. Dodge, supra. And in the exercise of the sound discretion, which guides the determination of courts of equity, scrupulous regard must be had for the rightful independence of state governments and a remedy infringing that independence which might otherwise be given should be withheld if sought on slight or inconsequential grounds. Di Giovanni v. Camden [Fire] Insurance Association, 296 U.S. 64, 73, 56 S.Ct. 1, 5, 80 L.Ed. 47, and cases cited."

Watson v. Buck (1941), 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416. Federal injunctions against state criminal statutes, either in their entirety or with respect to their separate and distinct prohibitions, are not to be granted as a matter of course, even if such statutes are unconstitutional. "No citizen or member of the community is immune from prosecution, in good faith, for his alleged criminal acts. The imminence of such a prosecution even though alleged to be unauthorized and hence unlawful is not alone ground for relief in equity which exerts its extraordinary powers only to prevent irreparable injury to the plaintiff who seeks its aid." Beal v. Missouri Pacific Railroad Corp., 312 U.S. 45, 49, 61 S.Ct. 418, 420, 85 L.Ed. 577. "The general rule is that equity will not interfere to prevent the enforcement of a criminal statute even though unconstitutional. * * * To justify such interference there must be exceptional circumstances and a clear showing that an injunction is necessary in order to afford adequate protection of constitutional rights. * * * We have said that it must appear that, 'the danger of irreparable loss is both great and immediate'; otherwise, the accused should first set up his defense in the state court, even though the validity of a statute is challenged. There is ample opportunity for ultimate review by this Court of federal questions." Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 95, 96, 55 S.Ct. 678, 680, 681, 79 L.Ed. 1322.

Douglas v. City of Jeannette (1943), 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324: "The power reserved to the states under the Constitution to provide for the determination of controversies in their

In the first place, these plaintiffs are not in this court with clean hands. That principle of law which would forestall injunctive relief will be later discussed. There is simply nothing in the evidence offered by these plaintiffs to show any irreparable damages within any recognized definition of that term. There is nothing in this record which would authorize, or justify this Court in taking over this prosecution, or any other prosecution in the state court against these plaintiffs for their violation of this valid statute. There is simply no fact, or circumstance, or reasonable inference to support the existence in this case of any *Dombrowski* right under the facts and surrounding circumstances in this case. Surely every scene in "The Fox" is not objectionable, but looking at the picture as a whole under all of the tests stated, the inescapable conclusion is that it portrays hard core pornography as entertainment. That indisputable sordid fact removes this case from any possible favorable consideration of

courts may be restricted by federal district courts only in obedience to Congressional legislation in conformity to the Judiciary Article of the Constitution. Congress, by its legislation, has adopted the policy, with certain well defined statutory exceptions, of leaving generally to the state courts the trial of criminal cases arising under state laws, subject to review by this Court of any federal questions involved. Hence, courts of equity in the exercise of their discretionary powers should conform to this policy by refusing to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and imminent; and equitable remedies infringing this independence of the states—though they might otherwise be given—should be withheld if sought on slight or inconsequential grounds." (Citations omitted) "It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions. No person is immune from prosecution in good faith for his alleged criminal acts. Its imminence, even though alleged to be in violation of constitutional guarantees, is not a ground for equity relief since the lawfulness or constitutionality of the statute or ordinance on which the prosecution is based may be determined as readily in the criminal case as in a suit for an injunction. (Citations omitted). Where the threatened prosecution is by state officers for alleged violations of a state law, the state courts are the final arbiters of its meaning and application, subject only to review by this Court on federal grounds appropriately asserted. Hence the arrest by the federal courts of the processes of the criminal law within the states, and the determination of questions of criminal liability under state law by a federal court of equity, are to

be supported only on a showing of danger of irreparable injury 'both great and immediate.' Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 95, 55 S.Ct. 678, 680, 79 L.Ed. 1322, and cases cited; Beal v. Missouri Pac. R.R. Corp., 312 U.S. 45, 49, 61 S.Ct. 418, 420, 85 L. Ed. 577; and cases cited; Watson v. Buck, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416; Williams v. Miller, 317 U.S. 599, 63 S.Ct. 258, 87 L.Ed. 489." " * * * * * * Far less should a federal court of equity attempt to envisage in advance all the diverse issues which could engage the attention of state courts in prosecutions of Jehovah's Witnesses for violations of the present ordinance, or assume to draw to a federal court the determination of those issues in advance, by a decree saying in what circumstances and conditions the application of the city ordinance *will be deemed to abridge freedom of speech and religion.*" To the same effect Spielman Motor Sales Co., Inc. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322; Cleary v. Bolger, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390; Beal v. Missouri Pacific Railroad Corp., 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577; Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444; Watson v. Buck, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416.

Cleary v. Bolger (1963), 371 U.S. 392, 83 S.Ct. 385 says: "Courts of equity traditionally have refused, except in rare instances, to enjoin criminal prosecutions. This principle 'is impressively reinforced when not merely the relations between coordinate courts but between coordinate political authorities are in issue.' Stefanelli v. Minard, 342 U.S. 117, 120, 72 S.Ct. 118, 120, 96 L.Ed. 138. It has been manifested in numerous decisions of this Court involving a State's enforcement of its criminal law. E. g., Pugach v. Dollinger, 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678; Douglas v. City of Jean-

any First Amendment rights asserted. The permanent injunction will likewise be denied.

■ The plaintiffs seek a declaratory judgment as to their rights in this case. Even though injunctive relief be denied in a case where the statute is attacked as being unconstitutional for vagueness and overbroadness,[9] plaintiffs are entitled to a declaratory judgment as to their rights, if any.

■ Section 2286 Mississippi Code 1942 is the Mississippi law on the subject of obscenity. The administration of that criminal statute must abide all of the three tests for its constitutional validity to survive. These principles have been extensively stated and presented and will not be further extended. On November 1, 1968, two duly appointed, qualified and acting police officers of Jackson, Mississippi entered a local theater as paid guests where the plaintiffs were showing the moving picture film known as "The Fox." That film is a very dull and offensive presentation of the illicit love life of two unmarried females and an unmarried male person. To this Court, as an average person applying contemporary community standards, it is found that the dominant theme of the material in this film taken as a whole appeals to the prurient interest in sex. The material is patently offensive because it affronts contemporary community standards relating to the representation of sexual matters and is utterly without redeeming social value. One must see and hear this picture with all its incidental sound effects and portrayals to fully grasp the hard core pornography entrenched in this film as an entirety. It has no acceptable artistic value. Plaintiffs' own witness (Lewis) describes the film as obscene and

shocking to him. It is significant that the record in this case shows that the offensive theme in this film is nowhere to be found in the book entitled "The Fox" on which it was based. When this film is viewed and heard and considered with all of its overtones and sound effects, the conclusion is inescapable under all of the tests that it is obscene and violates the Mississippi statute on that subject. The plaintiffs are guilty of pandering these obscene scenes for commercial gain or profit. The plaintiffs have no First Amendment rights in such hard core pornography. Consequently, this Court does not have the power, or the authority (or the desire) in the exercise of a sound judicial discretion to issue an injunction in this case. The plaintiffs have not shown by a preponderance of the evidence the existence of any irreparable injury that would justify the issuance of such extraordinary process in this case. There is no danger of any irreparable loss which is either great or immediate to the plaintiffs which will befall them upon denial of injunctive relief. These plaintiffs are not in this Court with clean hands and are not here offering to do equity, but they boldly come into this Court of equity seeking vindication of their wrong. That is a function of the state court with a lawful jury to determine as to their guilt or innocence of the violation of this statute. This Court accordingly finds as a fact and concludes as a matter of law that these plaintiffs in this case before the Court are guilty of a violation of this valid criminal statute of the state of Mississippi which clearly proscribes the showing of such a picture; and that this complaint is shown by the testimony and evidence to be devoid of any equity or merit.

nette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324; Watson v. Buck, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416; Beal v. Missouri Pac. R. Co., 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577."

9. Where a statute is attacked as being unconstitutional for vagueness and over-

broadness, even though injunctive relief is denied, the district court has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction. Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444.

The defendants requested a jury for the trial of all Seventh Amendment rights and all such questions were expressly reserved by the Court for determination after a disposition of the equity aspects of this case by the Court. The complaint charges and the answer denies that ABC Mid-South Theatres, Inc. is entitled to possession of these six reels of film of "The Fox." There is no testimony, or evidence in the record before the Court to establish plaintiffs' claim thereto. But, even though the individual plaintiffs were acquitted by a jury in the County Court of the charge of violating this obscenity statute, the jury was unable to agree as to the guilt, or innocence of ABC Mid-South Theatres, Inc.; and as to that plaintiff here, a mistrial was declared. These officers lawfully arrested the plaintiffs upon viewing the *entire* Fox film for a violation of this obscenity statute in their presence. Pursuant to such valid arrest, these peace officers had the lawful right to seize this film as they did as an instrument of the crime. The defendants have the right to use that film in evidence as proof of this crime. None of these plaintiffs have any standing in this Court under the clean hands doctrine to successfully seek a recovery of that film.[10]

---

10. Precision Instrument Mfg. Co., et al. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 provides: "The guiding doctrine in this case is the equitable maxim that 'he who comes into equity must come with clean hands.' This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on its part to be 'the abetter of iniquity.' Bein v. Heath, 6 How. 228, 247, 12 L.Ed. 416. Thus while 'equity does not demand that its suitors shall have led blameless lives,' Loughran v. Loughran, 292 U.S. 216, 229, 54 S.Ct. 684, 689, 78 L.Ed. 1219, as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue. Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245, 54 S.Ct. 146, 147, 78 L.Ed. 293; Johnson v. Yellow Cab Transit Co., 321 U.S. 383, 387, 64 S.Ct. 622, 624, 88 L.Ed. 814; 2 Pomeroy, Equity Jurisprudence (5th Ed.) §§ 397–399. This maxim necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant. It is 'not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion.' Keystone Driller Co. v. General Excavator Co., supra, 290 U.S. 240, 245, 246, 54 S.Ct. 147, 148, 78 L.Ed. 293. Accordingly one's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character. Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim by the chancellor. Moreover, where a suit in equity concerns the public interest as well as the private interests of the litigants this doctrine assumes even wider and more significant proportions. For if an equity court properly uses the maxim to withhold its assistance in such a case it not only prevents a wrongdoer from enjoying the fruits of his transgression but averts an injury to the public. The determination of when the maxim should be applied to bar this type of suit thus becomes of vital significance. See Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 492–494, 788, 62 S.Ct. 402, 405, 406, 86 L.Ed. 363."

To the same effect is Karl E. Stiegele and Speidel Corp. v. J. M. Moore Import-Export Co., Inc. (2CA), 312 F.2d 588.

New York Football Giants, Inc. v. Los Angeles Chargers Football Club, Inc. (5CA), 291 F.2d 471, the Court said: "Without considering the legal issues on the merits, we affirm the judgment of the trial court. We do so by application of the age-old, but sometimes overlooked, doctrine that 'he who comes into equity must come with clean hands.'"

Earle R. Hanson & Associates v. Farmers Cooperative Creamery Company of Clear Lake, Wisconsin (8CA), 403 F.2d 65 provides: " 'The misconduct need not be of such a nature as to be actually fraudulent or constitute a basis for legal

It is of no consequence that the clean hands doctrine was not pled in this case.[11] This case is decided on its merits on application for a permanent injunction where a temporary injunction was previously denied with finality. In the exercise of a sound judicial discretion under all of the facts and circumstances in this case, it is the considered judgment of this Court that the claim of the plaintiffs for a return of such lawfully seized film is likewise without merit and will be denied. The plaintiffs' equity claim in its entirety is without merit and will be finally dismissed at plaintiffs' costs. That will obviate any necessity for the intervention of a jury on any Seventh Amendment claim which will fall with the complaint.

The deposition of Thomas Wiley Lewis, III will be entered in evidence as Plaintiffs' Exhibit 3. The transcript of the proceedings in the County Court in the criminal cases with the state of Mississippi there is irrelevant and immaterial, and the objection therego will be sustained; and that transcript will be marked Plaintiffs' Exhibit 4 only for identification.

The findings of fact and conclusions of law contained herein are sufficient to meet all of the requirements of Civil Rule 52(a). The complaint in its entirety is without merit and all affirmative relief, except declaratory relief herein granted, will be denied and the complaint will be finally dismissed at plaintiffs' costs. A judgment accordingly may be presented within five days after this date under the rules of this Court.

NIXON, District Judge, concurs.

RIVES, Circuit Judge, dissents in separate opinion.

RIVES, Circuit Judge (dissenting):

If the majority decision is correct then Judges Rives, Grooms and Johnson erred in deciding Entertainment Ventures, Inc., et al. v. Brewer, et al., (M.D. Ala.1969), 306 F.Supp. 802. I adhere to the views expressed in *Entertainment Ventures,* a few of which I briefly restate as applied to the present litigation.

### I.

I think that the applicable Mississippi obscenity statute[1] fails to meet the constitutional requirements of the first and fourteenth amendments guaranteeing freedom of expression. The statute was enacted in 1920,[2] long before the decision in Roth.[3] In upholding the validity of a related statute,[4] the Mississippi Supreme Court adopted a much broader definition of obscenity than that promulgated in *Roth*:

"It is * * * necessary to notice the contention of appellant to the effect that this statute charges no crime, because the word 'obscene' has no specif-

---

action. The plaintiff may be denied relief where his conduct has been unconscionable by reason of a bad motive, or where the result induced by his conduct will be unconscionable either in the benefit to himself or the injury to others.' Johnson v. Freberg, 178 Minn. 594, 228 N.W. 159, 160 (1929). Cf. Precision Inst. Mfg. Co. v. Automotive Maintenance Mach. Co., 324 U.S. 806, 815, 65 S.Ct. 993, 89 L.Ed. 1381 (1945); Pope Mfg. Co. v. Gormully & Jeffery Mfg. Co., 144 U.S. 224, 236-237, 12 S.Ct. 632, 36 L.Ed. 414 (1892); Kool Vent Metal Awning Corp. of America v. Bottom, 205 F.2d 209 (8 Cir. 1953)."

11. Civil Rule 54(c) provides: "Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

1. Section 2286, Mississippi Code 1942, quoted in footnote 1 to the majority opinion.

2. Mississippi Laws 1920, ch. 213.

3. Roth y. United States, 1957, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498. A later Mississippi statute follows the *Roth* definition of obscenity. Section 2674-21, Mississippi Code Annotated, Recompiled (1968 supp.).

4. Section 2288 Mississippi Code Annotated, recompiled.

ic definite meaning. We must, however, differ with counsel upon this question. Quoting from 3 Words and Phrases, Second Series, p. 672:

" 'The word "obscene," when used, as in the statute, to describe the character of a book, pamphlet, or paper, means containing immodest and indecent matter, the reading whereof would have a tendency to deprave and corrupt the minds of those into whose hands the publication might fall, whose minds are open to such immoral influences'— citing United States v. Moore (D.C. Mo.) 129 Fed. 159, 161; United States v. Clarke (D.C.Mo.) 38 Fed. 732.

"Again:

" 'The word "obscene" means offensive to senses; repulsive; disgusting; foul; filthy; offensive to modesty or decency; impure; unchaste; indecent; lewd'—citing Holcombe v. State, 5 Ga.App. 47, 62 S.E. 647.

"See other definitions of like character therein contained."

Williams v. State, Miss.1923, 94 So. 882, 883, 884.

The phrase used in the statute,[5] "any obscene, indecent, or immoral picture * * *," can be construed to mean any frame or scene in a motion picture film or print instead of, as the *Roth* test requires, "the dominant theme of the material taken as a whole." 354 U.S. at 489, 77 S.Ct. at 1311. Indeed that was the position taken by the prosecuting attorneys and the trial court in the criminal case against the present plaintiffs. In the trial of that case the expert witnesses on the question of obscenity were restricted to the three isolated scenes

which the City contended were obscene, and the jury was instructed as follows:

### "INSTRUCTION NO. 3

"The Court instructs the jury for the State that this case is not one involving freedom of speech or expression; therefore, the test of obscenity is not whether to the average person, applying contemporary community standards, the dominant theme of the film, taken as a whole, appeals to the prurient interests or is patently offensive and utterly without redeeming social importance or value, but is one involving the portrayal on the screen of conduct; and, if you believe beyond a reasonable doubt and to a moral certainty, that certain portrayals of conduct contained in this film would be obscene if performed in public or on the public streets, then you will find the Defendant guilty as charged."

In the light of the definition of "obscene" already adopted by the Mississippi Supreme Court, and of the construction of the State statute by the Mississippi trial court in the criminal case against the present plaintiffs, I cannot agree with the majority that the obscenity test stated in *Roth* will or can be applied so as to make the State statute constitutional. When those Mississippi cases are considered, the statute is even more clearly unconstitutional than the 1909 Alabama statute held unconstitutional in Entertainment Ventures, Inc., et al. v. Brewer, et al., *supra*, or the Louisiana statute declared unconstitutional in Delta Book Dist., Inc. v. Cronvich, E.D.La.1969, 304 F.Supp. 662, 669.[6]

### II.

Assuming arguendo that, despite the earlier State court holdings, the majority can breathe life into the pertinent

---

5. Quoted in footnote 1 to majority opinion.

6. Indeed, on November 28, 1969 a three-judge district court, basing its decision on Stanley v. Georgia, 1969, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542, held that the first amendment forbids prose-

cution for showing an admittedly obscene film in a public threatre to a paying adult audience which had been warned of the film's nature. Karalexis v. Byrne, U.S. D.C.Mass., 306 F.Supp. 1363; temporary injunction stayed pending appeal, Byrne v. Karalexis, 396 U.S. 976, 90 S.Ct. 469, 24 L.Ed.2d 447, 486 (Dec. 15, 1969).

Mississippi obscenity statute, it nonetheless seems entirely clear that the arrests of the plaintiffs and the seizure of the film were unconstitutional. Lee Art Theatre, Inc. v. Virginia, 1968, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313; Metzger v. Pearcy, 7 Cir. 1968, 393 F.2d 202; Central Agency, Inc. v. Brown, N.D.Ga.1969, 306 F.Supp. 502 [Aug. 26, 1969]; Fontaine v. Dial, W.D.Tex.1969, 303 F.Supp. 436; Delta Book Dist., Inc. v. Cronvich, E.D.La.1969, 304 F.Supp. 662; Tyrone, Inc. v. Wilkinson, E.D.Va. 1969, 294 F.Supp. 1330, aff'd, 410 F.2d 639, cert. denied 12/15/69, 396 U.S. 985, 90 S.Ct. 478, 24 L.Ed.2d 449; Cambist Films, Inc. v. Tribell, E.D.Ky.1968, 293 F.Supp. 407; Cambist Films, Inc. v. Illinois, N.D.Ill.1968, 292 F.Supp. 185; United States v. Brown, S.D.N.Y.1967, 274 F.Supp. 561; Entertainment Ventures, Inc., et al. v. Brewer, et al., *supra*, Henry C. Morrison and Peachtree News, Inc., Ray Wilson, et al., N.D.Fla.1969 (Carswell, Cir.J. and Krentzman and Arnow, Dist.J.), 307 F.Supp. 196 [Dec. 8, 1969].

### III.

Following the precedent set in Entertainment Ventures, Inc., et al. v. Brewer, et al., *supra*, I would have preferred simply to rule on the constitutionality of the pertinent state statute and the constitutionality of the arrests of the plaintiffs and of the seizure of the film. We might then have foregone viewing the movie. However, since we have now witnessed the showing of the film, I would express my agreement with the declaration of Chief Judge William C. Keady

"That the motion picture 'The Fox' is hereby declared not to be obscene, in fact or in law, in accordance with controlling decisions, particularly Roth v. United States of America, 354 U.S. 476, [77 S.Ct. 1304] 1 L.Ed. 1498, and Jacobellis v. Ohio, 378 U.S. 184, [84 S.Ct. 1676] 12 L.Ed.2d 793 * * *."

J. A. Camise and C. J. Collier v. P. Lanier Douglas, N.D.Miss., Dec. 3, 1968, No. EC 6872–K.

For the foregoing reasons, I respectfully dissent.